## UNITED STATES, FOR THE USE OF HILL, v. AMERI-CAN SURETY COMPANY OF NEW YORK.

### ERROR TO THE SUPERIOR COURT OF KING COUNTY, STATE OF WASHINGTON.

No. 39.  Submitted November 3, 1905.—Decided January 2, 1906.

The act of August 13, 1894, 28 Stat. 278, was passed, as its title declares, for the protection of persons furnishing materials and labor for the construction of public works, and nothing in the statute, or in the bond therein authorized, limits the right of recovery to those furnishing material or labor to the contractor directly; but all persons supplying the contractor with labor or materials in the prosecution of the work are to be protected.

The rule which permits a surety to stand upon his strict legal rights does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract.

Such statutes are to be liberally interpreted and not to be literally construed so as to defeat the purpose of the legislature.

Under the circumstances of this case, a material man, who had complied with the provisions of the statute as to filing notice, was entitled to recover from the surety company on a bond given under the statute although the materials were furnished to a subcontractor and not directly to the contractor.

The facts are stated in the opinion of the court.

*Mr. Albert W. Buddress* for plaintiffs in error:

The act of Congress and bond were intended to cover just such cases as this, and to prevent such a miscarriage of justice. The original contractor could easily kill the effects of the statute, and avoid all liability on the bond by merely subletting all of its work.

Of the two classes of laborers, the employés of subcontractors stand most in need of the protection of the statute. *Redmond* v. *Galena, &c. R. Co.*, 39 Wisconsin, 426; *Mullin* v. *United States*, 48 C. C. A. 677; *United States* v. *Farley*, distinguished, and see *Sepp* v. *McCann*, 47 Minnesota, 364; *Fidelity Co.* v. *United States*, 191 U. S. 416.

Principals and sureties on such bonds are liable, under simi-

lar state statutes, for labor and material furnished to sub-contractors. Cases *supra* and *Mullin* v. *United States*, 48 C. C. A. 677; *George* v. *Washington &c. R. Co.,* 93 Maine, 134; *Branin* v. *Connecticut &c. R. Co.*, 31 Vermont, 214; *Kent* v. *New York &c. R. Co.*, 12 N. Y. 628; *Mundt* v. *Sheboygan &c. R. Co.*, 31 Wisconsin, 451; *Mann* v. *Corrigan*, 28 Kansas, 194; *Peters* v. *St. Louis &c. R. Co.*, 24 Missouri, 586; *Grannahan* v. *Hannibal &c. R. Co.*, 30 Missouri, 546; *French* v. *Powell*, 135 California, 636; *Gilmore* v. *Westerman*, 13 Washington, 390; *Abbott* v. *Morrissette*, 46 Minnesota 10; *Bassett* v. *Mills*, 89 Texas, 162; *Garrison* v. *Borio*, 61 N. J. Eq. 236; *Ferguson* v. *Despo*, 8 Ind. App. 523; 23 Am. & Eng. Ency. of Law, 2d ed., 723. Diligent search has not revealed any case holding the contrary.

The object of the bond cannot be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company, if there be another construction equally admissible under the terms of the instrument executed for the protection of the beneficiary. *Guarantee Co.* v. *Mechanics' Savings &c. Co.*, 183 U. S. 402. A remedial statute should be liberally construed with reference to the purpose of its enactment. *Bechtel* v. *United States*, 101 U. S. 597. The "intent" of the law must prevail over the letter of the statute. *Lionberger* v. *Rowse*, 6 Wall. 468; *Smythe* v. *Fiske*, 23 Wall. 374; *United States* v. *Freeman*, 3 How. 556; *Durousseau* v. *United States*, 6 Cranch, 308.

What is implied in a statute is as much a part of it as what is expressed. *United States* v. *Hodson*, 10 Wall. 395; *Baltimore* v. *Root*, 8 Maryland, 95; Broom's Leg. Max., 611; *Rutledge* v. *Crawford*, 91 California, 523.

The meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed. *Bell* v. *New York*, 105 N. Y. 139; *Bullock* v. *Horn*, 24 Ohio St. 420; *Tuttle* v. *Montford*, 7 California, 358; *Barnes* v. *Thompson*, 2 Swan (Tenn.),

313; Sedgwick, Stat. Con., 308; *Jones* v. *Great Southern Hotel,* 30 C. C. A. 108.

Public property cannot be the subject of a lien, unless the statutes shall expressly so provide; it is by implication excepted from lien statutes, as much as from general tax laws, and for the same reasons. *Knapp* v. *Swaney,* 56 Michigan, 345; *Bates* v. *Santa Barbara,* 90 California, 543. But it is also true that "the State when engaged in the construction of public buildings, is chargeable with a moral duty to protect persons furnishing labor and material therefor." *Korsmeyer* v. *McClay,* 43 Nebraska, 649; *Knapp* v. *Swaney,* 56 Michigan, 345; *Baker* v. *Bryan,* 64 Iowa, 561; *Philadelphia* v. *Stewart,* 195 Pa. St. 309; *St. Louis* v. *Von Phul,* 133 Missouri, 564.

The right of plaintiff in error, however, does not depend only on a substitute for a lien but also on the implied agency of the subcontractor for the contractor. *Bates* v. *Santa Barbara,* 90 California, 543; *Kent* v. *New York Central R. Co.,* 12 N. Y. 628; *Surety Co.* v. *Cement Co.,* 110 Fed. Rep. 717; *Garrison* v. *Borio,* 61 N. J. Eq. 236. See also *Parker* v. *Gray,* 7 Gray, 429.

*Mr. Henry C. Willcox* for defendant in error, cited *United States* v. *Farley,* 91 Fed. Rep. 477; *United States* v. *Simon,* 98 Fed. Rep. 73; *United States* v. *Mullin,* 48 C. C. A. 677.

MR. JUSTICE DAY delivered the opinion of the court.

This case was decided on demurrer in the court below. It was held that no cause of action was stated by the plaintiff, and judgment was rendered accordingly. Plaintiffs brought action as partners against the American Surety Company upon a bond given in pursuance of the act of August 13, 1894. 28 Stat. 278, c. 280. The allegations of the petition, so far important as to be noticed here, are: The defendant is a corporation duly authorized to do a general insurance and bonding business. On February 14, 1891, the New Jersey Foundry and Machine Com-

pany entered into a written contract with the United States, for the construction of four observation towers, for the agreed compensation of $2,575. That, among other things, it was stipulated in the contract "that the said New Jersey Foundry and Machine Company shall be responsible for and pay all liabilities incurred in the prosecution of the work for labor and material," the work to be completed within seven months from date of contract. The United States required of the said New Jersey Foundry and Machine Company a bond, which was executed by the company and the American Surety Company as surety, on the fourteenth day of February, 1901, in the penal sum of $4,000, to be paid unto the United States of America, which bond contained the condition: "Now, therefore, if the above bounden New Jersey Foundry and Machine Company shall and will in all respects duly and fully observe and perform all and singular the covenants, conditions and agreements in and by said contract agreed and covenanted by said New Jersey Foundry and Machine Company to be observed and performed, according to the true intent and meaning of said contract, and as well during any period of extension of said contract that may be granted on the part of the United States, as during the original terms of the same, and shall promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise, to remain in full force and virtue." That afterwards the said New Jersey Foundry and Machine Company entered into a contract with the Richard Manufacturing Company for certain portions of the work, and said Richard Manufacturing Company entered upon the performance of the contract, and in the performance thereof between the third day of April and the seventeenth day of May, of the same year, Daniel H. Hill and Howard H. Hill, the plaintiffs, at the special instance and request of the said Richard Manufacturing Company, scraped and painted the four observation towers, to be constructed under the contract with the said New Jersey Foundry and Machine Company, for which said

Richard Manufacturing Company agreed to pay the said plaintiffs the sum of $246.80, of which there is unpaid the sum of $141.80. That on the eleventh day of August, 1903, plaintiffs made the affidavit required by the statute, and procured from the Secretary of War of the United States certified copies of the original contract and bonds; that the said New Jersey Foundry and Machine Company, the Richard Manufacturing Company and the United States accepted the said scraping and painting so done and performed by the plaintiffs in the necessary prosecution of the work required by the original contract.

The statute under consideration is entitled "An act for the protection of persons furnishing materials and labor for the construction of public works." It provides, in substance, that persons entering into formal contracts with the United States for the construction or repair of public buildings and works shall be required, before performing such work, to execute the usual penal bond with good and sufficient surety, with the additional obligation "that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials in the prosecution of the work provided for in such contract." The statute further provides for the furnishing of a copy of the contract and bond to persons furnishing an affidavit that labor and materials for the prosecution of such work have been supplied by him or them, and giving a right of action in the name of the United States for the benefit and use of said person or persons against the contractor and his sureties.

We may remark, before considering the construction to be given this act, that it has been materially amended by the act of February 24, 1905. 33 Stat. 811. The amended act makes provision for preference in payment in favor of the United States, limits the time in which actions may be brought, provides for bringing all the creditors into one action, and for the prosecution of the same in the name of the United States in the Circuit Courts of the United States in the district in which the contract was to be performed, and not elsewhere. In respect to the persons entitled to the benefit of the bond there has been

no material change in the act. While not governing the present action the amended statute has some bearing in construing the act in question, as it shows the consistent purpose of Congress to protect those who furnish labor or material in the prosecution of public work.

In considering the statute and determining the scope of the bond divergent views have been urged upon the court. Upon the one hand it is insisted that the bond is to be strictly construed and a recovery limited to those who have furnished material or labor directly to the contractor, and upon the other that a more liberal construction be given and a recovery permitted to those who have furnished labor and materials which have been used in the prosecution of the work, whether furnished under the contract directly to the contractor, or to a subcontractor.

This statute was before this court in *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S: 416, and while the question whether surety companies which are such for compensation are entitled to the same strict construction of their rights and obligations as is accorded to private sureties, who become such without reward or profit, was left open, it was nevertheless said: "The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the subcontractor, with a view of furthering the beneficent object of the statute. Of course, this rule would not extend to cases of fraud or unfair dealing on the part of a subcontractor, as was the case in *United States* v. *American Bonding & Trust Company*, 89 Fed. Rep. 921, 925, or to cases not otherwise within the scope of the undertaking."

The courts of this country have generally given to statutes intending to secure to those furnishing labor and supplies for

the construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those who have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or materials. *Mining Co.* v. *Cullens,* 104 U. S. 176, 177. And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of. the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties. *Ulster County Savings In.* v. *Young,* 161 N. Y. 23, 30.

As against the United States, no lien can be provided upon its public buildings or grounds, and it was the purpose of this act to substitute the obligation of a bond for the security which might otherwise be obtained by attaching a lien to the property of an individual. The purpose of the law is, as its title declares: "For the protection of persons furnishing materials and labor for the construction of public works." If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials directly to the contractor, for which he would be personally liable. But we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the public building shall be paid for and to provide a security to that end.

Statutes are not to be so literally construed as to defeat the purpose of the legislature. "A thing which is within the intention of the makers of the statute, is as much within the statute, as if it were within the letter." *United States* v. *Freeman,* 3 How. 556. "The spirit as well as the letter of a statute must be respected, and where the whole context of a law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent." Chief Justice Marshall in *Durousseau* v. *United States,* 6 Cranch, 307.

Looking to the terms of this statute in its original form, and

as amended in 1905, we find the same Congressional purpose to require payment for material and labor which have been furnished for the construction of public works.    The affidavit to be filed with the head of the department under the direction of which the work has been prosecuted requires the affiant to state that labor or materials for the prosecution of such work has been supplied by him, for which payment has not been made, and such persons are given a right of action on the bond in the name of the United States.    Language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work. There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected.    The source of the labor or material is not indicated or circumscribed.    It is only required to be "supplied" to the contractor in the prosecution of the work provided for.    How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished.

If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated.

We cannot conceive that this construction works any hardship to the surety.    The contractor gets the benefit of such work or material.    It is distinctly averred in this case that the original contractor received the benefit of the work done and it was used in part performance of his contract.    It is easy for the contractor to see to it that he and his surety are secured against loss by requiring those with whom he deals to give security by bond, or otherwise, for the payment of such persons as furnish

work or labor to go into· the structure.   In view of ·the declared purpose of the statute, in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor· or material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor or materials directly to the contractor.   The obligation is "to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract."   This language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which the labor· or materials· were supplied.   If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied ·with .the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials.

We reach the conclusion that the labor and materials furnished in this case were within the obligation of the Surety Company on the bond, and in that view

> *The judgment of the Superior Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.*