Wanamaker, J.,
dissenting. I dissent from the judgment and syllabus of this case. Due respect for the majority opinion as well as for the importance of this case requires that I set forth in some detail my reasons for this dissent.
My contention is that the judgment and syllabus in this case are contrary to the authority of modern precedent, contrary to the authority of reason, contrary to the intention of the parties to the bond, contrary to the progressive jurisprudence and the humanitarian spirit of the times.
The majority opinion concedes the doctrine laid down in The American Surety Company of New York v. Raeder, Assignee, et al., 15 C. C., at page 47, which was affirmed without opinion in 61 Ohio St., 661.
The syllabus of the case reads as follows:
“Where, in a contract with a board of education for the building of a school house, the con *200 tractor was required to, and did give a bond for the faithful performance of the contract, providing also that he should pay all just and legal claims for labor performed upon, and for material furnished for the work, and also agreeing that the undertaking should be for the use of any laborer or materialman having a just claim as aforesaid, as well as for the board of education, such obligation so far as laborers and materialmen are concerned is not beyond the powers of the board of education, but is valid, and may be enforced against the sureties on such bond by any laborer or materialman who has a legal claim against such contractor for labor performed or material furnished in the erection of the building.”
The bond in that case, among other provisions,' contains the following:
“The condition of this obligation is such, that, whereas, the said Peter J. Black, did, on the 27th day of May, A. D. 1895, enter into the foregoing agreement with said Board of Education, which said agreement is made a part of this bond, the same as though fully set forth herein, now, if the said Peter J. Black, designated as said party ■ of the second part, in the said foregoing agreement, shall well and truly perform all and singular, the stipulations of said agreement by him to be performed, and shall pay all just and legal claims for labor performed upon, and for materials furnished for the work specified in said agree-' ment, the same shall remain in full force and virtue in law; otherwise, then, this obligation shall be void. We hereby agreeing and consenting that *201 this undertaking shall be for the use of any laborer or materialman having a just claim as aforesaid, as well as for said Board of Education!’
The very able and conclusive opinion in this case, by Judge Hale of the circuit court of Cuyahoga county, might well be sufficient to justify this dissent.
The old doctrine that a third party, stranger to the instrument or contract, might not sue under the contract because of there being no “privity” between him and the other parties to the contract, has long been disregarded.
“In most of the states the English doctrine that where a person makes a promise to another for the benefit of' a third person the' latter cannot maintain an action upon it is not recognized to the full extent, but it is held, subject to the qualification hereafter stated, that the action may be maintained. This is now the prevailing doctrine in the United States. This is sometimes based on general principles of law and sometimes, as in the code states, on the provisions of the code of procedure that every action shall be prosecuted ‘in the name of the real party in interest.’ ” 9 Cyc., 377, et seq.
“By the weight of authority the action cannot be maintained merely because the third person will be incidentally benefited by performance of the contract; but he must be a party to the consideration, or the contract must have been entered into for his benefit, and he must have some legal or equitable interest in its performance. If the person for whose benefit a contract is made has *202 either a legal or equitable interest in the performance of the contract, he need, not necessarily be privy to the consideration.” 9 Cyc., 380.
Some of the states, New York for instance, have adhered very closely to the old English rule and have relaxed it only to a very limited degree, while the central and western states’ decisions, as well as our federal decisions, have repudiated the English doctrine almost entirely.
The majority opinion cites with approval the Ohio cases of Crumbaugh v. Kugler, 3 Ohio St., 544; Thompson, Admx., v. Thompson, 4 Ohio St., 333; Bagaley & Co. v. Waters, 7 Ohio St., 359, as announcing the doctrine that a third party can sue only where there is an existing indebtedness.
It must be conceded on all hands that that is not the law to-day in respect to bonds. Bonds generally relate entirely to the future and in no wise to the past. They are given expressly to guarantee the faithful performance of future personal duties, trust duties and official duties, to provide against future defaults and defalcations. And if this be sound doctrine — that an existing indebtedness had to be the basic predicate of the right of a third party to sue — then all such contracts in futuro would be mere nullities so far as third parties are concerned.
Now there is no more reason in principle why there should be an existing indebtedness to support an action by a third party than in case of the first or second party to a contract. Raeder case, supra.
*203 In line with these old cases is also the case of Emmitt v. Brophy, 42 Ohio St., 82, in which again the existing indebtedness is emphasized as an essential qualification of the bond. This last case is cited with approval in the case of C., H. & D. Rd. Co. v. Bank, 54 Ohio St., 60.
Great emphasis is laid upon this last case by the majority, and Judge Spear’s opinion is specially commended. The syllabus in that case reads as follows:
“An action cannot be maintained against a bank by the holders of a check for refusal to pay it unless the check has been accepted, although there stands to the credit of the drawer on the books of the bank a sum more than sufficient to meet the check.”
This syllabus is absolutely without any relevancy to the case at bar, and I further contend .and maintain that it is not sound doctrine as applied to existing commercial transactions with a modern-day bank, in which all checking accounts are expressly made subject to the payment of all checks issued, not only upon the bank by the depositor in his own favor but issued in favor of third parties, so long as the bank has the funds with which to pay. This agrees with the progressive business spirit of the times. Certainly the owner, holder or payee of the check is the real party in interest, and I cannot believe that such a decision would receive the sanction of this court in the year 1914. Who is the “real party in interest” if not the payee of the check?
*204 Judge Spear,- in that opinion, uses this language: “Nowhere is it held that the obligation will attach in favor of future creditors not named and not known, and as to amounts not specified or then ascertainable, to the extent of giving to such creditors a right of action on the contract.”
And yet this very court in affirming the Raeder case, supra, four years later, repudiated the foregoing doctrine that third parties not named could bring suit and for an amount not then ascertainable.'
Now it must be conceded that the intention of the parties to be determined from what they have said and done shall be the pole-star in interpreting all written instruments, whether simple contracts, checks, bonds, and even statutes and constitutions.- - The majority opinion is strangely silent on the question of what was the intention of the parties to the bond.
The intention in the Raeder case, supra, is manifest from the express terms of the contract, and that, too, without the aid of the last three lines of that bond.' Is the intention of the parties not equally manifest from the terms of the bond in the case at bar?
The part' of the bond pertinent to this inquiry’ is as follows:
“The - condition of this obligation is such that whereas the said N. J. Gaspard on the 17th day of Aug., A. D. 1909, entered into a written agreement' with the said F. Zimmerman Realty Co., whereby-he contracted to provide all the materials and-perform all thé work for the erection and completion of the carpenter work, wooden *205 framing, frames, sash, doors, finish, flooring, roofing, sheet metal work, marble and mosaic, mantel and tile work, glass and glazing, rough and finished hardware for a three-story brick apartment building to be erected on the northeast, corner of E. 86th street and Birchdale avenue, Cleveland, O., and to furnish all tools, implements and cartage thereto as shown by drawings and specifications by architect, G. B. Bohm, and whereas said contract further provided as follows:
“ ‘As a condition of this contract to furnish the owner a satisfactory surety bond as agreed in the sum of six thousand dollars ($6,000.00), to guarantee the completion of the work comprehended in this agreement, and to further guarantee the payment of any claims there may be for the payment of material and labor required in the erection of this building/ and
“Whereas, in lieu of a surety bond, it is agreed between the said parties that said N. J. Gaspard may furnish a bond signed by individuals.
“Now, therefore, if the said N. J. Gaspard shall well and truly perform all the terms and conditions contained in said contract and complete said work as therein provided and pay or cause to be paid all claims contracted in reference thereto for material and labor, then the above obligation to be void; otherwise the same shall remain in full force and virtue in law.”
Now it is admitted that a bond shall be construed strictly, but that strict construction must likewise be a just and reasonable construction, and must accord with the intention of the parties. It *206 is not limited to the letter of the bond as therein written, but what is necessarily implied in the bond is as much a part of it as what is expressly written in the bond.
In the second paragraph of the bond quoted above, suppose we add a parenthesis so that the italicized part will read as follows: “And to further guarantee the payment of any claims there niay be for the payment of material and labor required in the erection of this building (to whomsoever shall furnish such material and labor in accordánce with the contract)”; and the same parenthesis in the last paragraph of the bond quoted, “to pay or cause to be paid all claims con-, tracted in reference thereto for material and labor (to whomsoever shall furnish such material or labor in'accordance with the contract).”
Why are these parenthetical parts not as much a part of the bond as if they were written in the bond? All parties must have so understood it, because it is so obviously and necessarily implied.
' If now they are a part of this bond, how then-is this case distinguishable in principle from the Raeder case, supra, which has been recognized as the law by this court?
Indeed, in order in anywise to justify the construction' placed upon this bond by the majority of this court, something additional needs to be read into the bond, else this language of the bond means nothing, accomplishes nothing, obligates nobody;
The language that must of necessity be read into this bond is substantially this parenthesis: *207 “And to further guarantee the payment of any claims there may be for the payment of material and labor required in the erection of this building (provided the owner of the building has been compelled to make previous payment, or the .materialmen and laboring men have filed mechanics’ liens upon the building, for which the owner would be liable).” So that it turns out that the majority opinion does not adhere to the strict letter of the bond but reads into it something that limits and qualifies the language used, so as to destroy the protection evidently to be fúrnished to the subcontractors, materialmen and laboring men in the erection of the building.
Returning again to the particular bond in this case, it will be noticed that the bond itself expressly mentions “sheet-metal work” What for? Was it not intended thereby to specially guarantee under this bond the payment for all sheet-metal work? And who furnished the sheet-metal work, the owner of the building or the plaintiff subcontractor? Manifestly the payment must be made to the party who furnished the work and material.
Again, the language of the bond in the second paragraph is “[1] to guarantee the completion of the work comprehended in this agreement, and [2] to further guarantee the payment of any claims there may be for the payment of material and labor required..in the erection of this building.”
Now, the syllabus of this case, which seeks to justify the judgment, contains this language: “That the bond * * * is for the protection of *208 the owner of the building, and an action on the bond against the sureties thereon cannot be maintained by a company [subcontractor] for the payment of claims against the contractor,” etc.
Of course, I admit that it is for the protection of the owner of the building, but I deny that it is exclusively for his protection. The language just quoted following [1] shows that it was to guarantee the completion of the contract, and [2] to guarantee the payment of claims for material- and labor required in the erection of this building.
What I claim is that while this is for the protection of the owner primarily, it is also for the protection of all laborers, materialmen and subcontractors secondarily, who have to do with “erection of this building.” The course of reasoning following in the opinion justifies, yes demands, the reading of the word “exclusively” after the word “is,” so that the syllabus would read “is exclusively for the protection of the owner of the building.”
Let us analyze this language of the bond from another angle:
“And to further guarantee the payment” — not to the owner certainly, for on completion of the contract the owner was to pay and not to be paid.
“Of any claims” — claims of whom? Not the owner, because he hadn’t any, but the laborers, subcontractors and materialmen. Again, note the broad, comprehensive scope of the words “any claim,” which would include, of course, accounts, notes, liens, etc.
*209 “There may be for the payment of material and labor” — past or future, which; and for “material and labor” — who furnished it, the owner or third parties ?
“Required in the erection of this building”— this is as broad in scope as words can be.
■After assembling these separate italicized phrases and clauses beginning these several paragraphs, ask yourself the question, If it was not intended to include the claims of subcontractors, laborers and materialmen, pray what was all this language used for anyhow?
The construction of the majority utterly disregards and destroys all these words that appear in two separate paragraphs of the bond in substantially the same style of speech. The old elementary rule of construction that the court shall give effect if possible to all parts of the contract is clearly and radically violated.
Now every owner of a building in contemplation of erection feels at least a moral obligation to have all laborers, materialmen and subcontractors fully paid. He does not take any pleasure in having some one pass his building and sáy: “I put one thousand dollars’ worth of labor or one thousand dollars’ worth of material into that building and it never was paid for.”
Men in this age are trying to get ¿way from the old, narrow, selfish idea of every man for himself, and upon the contrary the individual does feel that he is, in some sense, “his brother’s keeper.” It was the'most natural thing for the owner of this building to undertake to provide by a prop *210 er bond that all claims “for material and labor required in the erection of this building” should be paid for under the bond.
The policy of our federal laws in this respect has been ably discussed and determined in Hill v. American Surety Co., 200 U. S., 197, decided January 2, 1906. The syllabus reads as follows:
“The act of August 13, 1894, 28 Stat., 278, was issued, as the title declares, for the protection of persons furnishing materials and labor for the construction of public works, and nothing in the statute, or in the bond therein authorized, limits the right of recovery to those furnishing material' or labor to the contractor directly; but all persons supplying the contractor with labor or materials in the prosecution of the work are to be protected.
“The rule which permits a surety to stand upon his strict legal rights does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract.
“Such statutes are to be liberally interpreted and not to be literally construed so as to defeat the purpose of the legislature.
“Under the circumstances of this case, a materialman, who had complied with the provisions of the statutes as to filing notice, was entitled to recover from the surety company on a bond given under the statute, although the materials were furnished to a subcontractor and not directly to the contractor.”
Judge Day in his opinion uses this language: “The courts of this country have generally given to statutes intending to secure to those furnish *211 ing labor and supplies for the construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those zvho have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor and materials. * * * And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances- surrounding the parties.”
If there should be a liberal construction of a statute to effect its purpose, why should there not be at least a fair and reasonable construction of a contract or of a bond with a view of effecting its purpose?
Judge Day goes on in the following language: “Statutes are not to be so literally construed as to defeat the purpose of the legislature. ‘A thing which is within the intention of the makers of the statute, is as much within the statute, as if it were within the letter.’ ”
By the same doctrine, a thing which is clearly implied in the contract must be as much a part of the contract as if it were within the letter or words of the contract, all of which I hold justifies reading into the bond the parenthetical words heretofore referred to.
“The obligation is ho make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in *212 said contract/ This language, read in the light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which labor or materials were supplied. If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials.”
While there is a statute governing this matter in national public work, it is equally the policy in the several states, not merely as to public work but as to private work, and specially where bonds are executed for the faithful performance of such work.
A more recent case by the supreme court of the United States, in which the same judge, Judge Day, rendered the opinion, was decided December 1, 1913, under the title of United States Fidelity & Guaranty Co. v. United States, for the benefit of Bartlett, 231 U. S., 237.
This was a suit on a bond which included this provision, i. e., that the contractor or contractors would “promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract.”
*213 In the contract it was provided that the contractor should be held responsible for and pay all liabilities incurred in the prosecution of the work for labor and material. The contractor, Donavin, executed the bond. There was no existing indebtedness, and Bartlett’s name was not mentioned in the bond. The lower courts held with Bartlett. The supreme court affirmed their judgment.
The New York decisions, of course, support the doctrine announced and defended in the majority opinion, but Iowa, Nebraska, Michigan, Minnesota and some other central and western states, together with the federal decisions, strongly support the doctrine here contended for. And why should we virtually overrule the Raeder case? There is now no occasion for any backward step. Between the strict technical interpretation of the eighteenth century that severely followed the letter that killeth and the liberal progressive interpretation of the twentieth century that follows the spirit and maketh alive, giving wages to labor and payment to subcontractors and -materialmen, I prefer the latter.