## CONTINENTAL CASUALTY CO. v. NORTH AMERICAN CEMENT CORPORATION.

### No. 6343.

United States Court of Appeals for the District of Columbia.
Argued April 9, 1937.
Decided May 10, 1937.

Rehearing Denied June 25, 1937.

Woodson P. Houghton and Kahl K. Spriggs, both of Washington, D. C., for appellant.

Dean Hill Stanley, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

There is in effect in the District of Columbia an Act[1] in all respects (involved here) identical with the Heard Act.[2] The former relates to construction contracts with the District; the latter to construction contracts with the federal government. Appellant is the surety on a bond executed under the provisions of the District Act. The action was brought by Massaponax Sand & Gravel Corporation[3] against Roy D. Schlegel and his surety (appellant) to recover for materials furnished in the prosecution of work under a contract between the District of Columbia and Schlegel. Appellee intervened. Its petition alleged that on or about July 8, 1933, Schlegel entered into a contract with the District of Columbia to construct concrete sidewalks for the District and that appellant as surety executed and delivered a bond conditioned upon the faithful performance by Schlegel of the provisions of the contract and the payment of all persons supplying him labor and material in the prosecution of the work.

A brief summary of the facts shows that the District entered into two contracts, one with Schlegel for the construction of sidewalks and one with Lake Stone Company for the repair of certain other sidewalks. Schlegel and Lake Stone entered into a working agreement pooling their resources in the execution of the two contracts; Schlegel superintended the outside work, and Lake Stone managed the bookkeeping and financial matters. Schlegel turned over his payments from the District to Lake Stone, and it made out the pay rolls and supplied the money for their payment and the payment of materials. After the contracts had been awarded but before work had commenced appellee, whose business is the manufacture of cement, requested Schlegel to use its brand of cement in the work; but informed Schlegel that in case he did he would have to purchase the cement through a dealer—in this instance Potomac Builders Supply Company—because under its business policy it could sell to contractors only

---

[1] Act of July 7, 1932, Title 20, § 47. Supp. II to D.C.Code 1929.
[2] Section 270, title 40, U.S.Code (40 U.S.C.A. § 270).

[3] The claim of Massaponax Company has been settled and is no longer in issue.

through a dealer. Schlegel contracted with Potomac Company for the cement he was to use, and subsequently appellee made a contract with Potomac Company for the sale of the cement necessary in the work, in which it was stipulated that the cement purchased was "for resale to R. D. Schlegel * * * contractor, for the construction of concrete sidewalks in Washington, 22,000 sq. yds." Lake Stone also contracted with Potomac Company for the cement it was to need, and appellee made a similar contract to sell to Potomac Company the amount of cement required on account of Lake Stone work. Shipments under both contracts began in July, 1933, and continued until March, 1934. All the cement under both contracts was consigned to Lake Stone, and the latter under its working agreement with Schlegel receipted for the cement, paid the freight bills, and attended to the delivery at the job. The invoices for cement were at first issued to Potomac Company, but after fifteen shipments out of eighty-four, Potomac Company got into financial difficulties, and the remaining sixty-nine, invoices were sent direct to Lake Stone. That company paid for the cement received and used for joint account out of the fund made up of payments under both Schlegel and Lake Stone contracts with the District. Appellee claimed a balance due of $3,935.77 on account of cement received and used by Schlegel, and the court below awarded judgment in this amount with interest from November 25, 1933, which was the date Schlegel completed his work for the District.

The point principally stressed by appellant (surety company) on this appeal is that appellee (cement company) has no right to bring the suit under the provisions of the District of Columbia Act because, having contracted with Potomac Supply Company to sell cement to it and not having contracted directly with Schlegel, it is not a subcontractor or a person supplying the contractor with labor and materials in the prosecution of the work. In short, that under the plain language of the act recovery on the bond is expressly limited to those persons who furnish labor or material upon the contractor's or subcontractor's (where there is one) own order.

Here, it is insisted by appellant that the cement company's contract was with the Potomac Company and the cement in question was furnished by Potomac Company and that it alone, if unpaid, is protected under the bond. Appellant, therefore, insists the judgment below is wrong because while the statute and bond protect the materialman who supplies the contractor —or subcontractor—they do not extend to a person who supplies the materialman—a remote person unknown to the contractor and wholly unrelated to him by contract.

Appellee replies to this that the statute looks to the protection of those who supply the labor and materials provided for in the contract, and not to the particular contract or engagement under which the labor or materials are supplied, and relies in support of its position upon U. S. use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 170, 50 L.Ed. 437. In that case the Supreme Court, speaking of the Heard Act—which, as we have seen, is identical with the District Act—said: "Language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work. There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for."

This construction of the statute is about as broad as words can make it. Accepted at face, it implies a right of protection to any person doing work or furnishing material in the carrying out of the contract, however remote the relationship to the contractor. It would permit intervention by the manufacturer of materials furnished to the vendor of a subcontractor even though the subcontractor had paid the vendor in full. It would permit one who sells material to another materialman who in turn furnishes it to the contractor to recover against the bond. It would, in my opinion, establish a rule resulting in confusion; and, since the Hill Case involved only the right of a furnisher of supplies or labor, immediately to the subcontractor, to look to the bond for protection, the broad implications of the language may be disregarded. For the present, at least, we are unwilling to construe the local statute as going to that extent. In saying this we are not unmindful that at least in one of the other Circuits such

a rule was adopted. In the case of Utah Construction Co. v. United States (C.C.A.) 15 F.(2d) 21, the intervener was a corporation which had supplied materials to the vendor of materials to a subcontractor, and it was held that the statute was broad enough to afford it protection.

The question, however, so far as this case is concerned, is academic. Here there is no doubt that appellee in fact supplied the cement which Schlegel used in the prosecution of his contract with the District, and it is only the intervention of Potomac Company in the respect we have shown which is urged to defeat appellee's right to recover under the bond. But when Potomac Company became involved in difficulty the record discloses that representatives of appellee, Potomac Company, and Lake Stone met, and that appellee thereupon agreed to bill Lake Stone directly for the cement and that Lake Stone in its own behalf and for Schlegel agreed to pay appellee for it. In view of the relationship between Schlegel and Lake Stone, it is clear that this undertaking by Lake Stone had the effect of eliminating Potomac Company as a party to subsequent dealings. During the four or five months that the materials here involved were furnished, and after Potomac Company had withdrawn, appellee and Schlegel (through Lake Stone) were dealing solely with one another. To say, therefore, that because of the conditions surrounding the original undertaking the cost of the cement furnished and used in the work is not covered by the bond, is wholly without justification.

The assignments with relation to the alleged improper admission of evidence and the alleged variance between the allegations of the petition and the proof have been carefully examined, but we think they are without merit. And this leaves for decision only the assignment growing out of the application by appellee of the payments made on account. That is to say, the method to be used to compute the balance due appellee on account of cement furnished to Schlegel. Appellee claimed and was given judgment below for $3,935.77. Appellant contends that the figure should be $2,709.19. Both amounts are mathematically correct, and the difference is in the methods of computation.

Appellee's bookkeeper testified that he first kept an account in the name of Potomac Company but later opened an account in the name of Lake Stone—this, when billing was agreed to be made directly to Lake Stone. Charges against the account were made from the invoices covering each consignment of cement; but there was no segregation of the charges as between Schlegel and Lake Stone. Appellee's books revealed, therefore, how much cement was shipped to both contractors and the amount due upon the whole account, but they did not show what part of the cement Schlegel received. Similarly, credits to the account were not segregated between the parties. Payments by checks from Lake Stone, credits for bags returned, etc., were entered in favor of the whole account and no part of any payment was applied—or, in the way the books were set up, could be applied—to Schlegel's indebtedness. After default in payment had necessitated legal action, appellee's accountant undertook to ascertain what part of the entire unpaid balance due on the account was properly allocable to Schlegel. The accountant explained his method as follows: "We first took the amount of cement shipped on both contracts and from the District [of Columbia] records we determined what percentage went into one contract and what went into the other. The same percentage was used on all credits which [were] applied to the account. By 'credits' I mean cash received, cash discount allowed, and freight allowed." In other words, if Schlegel was found to have used 25 per cent. of all the cement sold, appellee gave him credit for 25 per cent. of all the credits made upon this joint account. By this ex post facto method of computation the balance due is $3,935.77.

Appellant arrives at a lower figure by computing the balance from the current ledger. The Potomac Company account mentioned above was closed out and paid as of August 10th. On that date the account with Lake Stone was opened. Appellee's bookkeeper testified that when checks for credit to the account came in from Lake Stone they had attached to them memoranda indicating which invoices were being thereby paid. Posting was done as directed—the credits being always applied to the oldest charges. Thus we find credits entered upon August 29th paying charges through August 12th, and credits on September 11th paying charges through August 31st. This application of credits in order of the seniority of charges continued during the term of the account until we find credits entered on December 23d paying all invoices through October 31st. If the account had closed as

of October 31st, therefore, there would have been no balance due. But Schlegel and Lake Stone continued to receive cement, and we find the next succeeding charge of $896.74 entered on November 4th. The only credits available for application against this charge total $875, which appellee has not applied specifically; but applying them to the oldest charge—according to appellee's bookkeeping practice—the account would be paid through November 4th, save for the sum of $21.74.

Appellant contends that in determining the amount for which Schlegel became liable we should begin with the $21.74 balance as of November 4th and ascertain how much cement Schlegel received and used after that time. According to appellee's bill of particulars, Schlegel used, from November 4th to completion of his work, some eleven hundred barrels of cement at a cost of $2,-687.45. This amount, plus $21.74, totals $2,709.19, which amount, appellant contends, is all it can possibly be held to pay since that represents all the cement appellee has shown Schlegel used for which appellee has not been paid.

The argument of appellee against appellant's method of computation is that it attempts to take credit for all payments made by both Lake Stone and Schlegel and at the same time to charge Schlegel only with the cement actually traceable to him, thus depriving Lake Stone of the benefit of credits properly due it. If Lake Stone were a party here and were making this argument, there might be merit to it, for as between Lake Stone and Schlegel the latter undoubtedly is entitled only to payments he actually made and is not entitled to credits due to Lake Stone. But Lake Stone is not a party and whether or not appellant's computation is injurious to it is a question for Lake Stone to raise if it should ever be material. It was an essential part of appellee's case to prove the state of its account with Schlegel. Its method of computation is reasonable as between Lake Stone and Schlegel, but so far as appellee is concerned it is based upon speculation. Obviously Schlegel's proportion of the payments made by Lake Stone may° have been more than, less than, or the same as, the proportion which the cement he used bore to the whole amount sold. If appellee's bookkeeping method does not permit accurate determination of the real balance due from Schlegel, the fault is not attributable to Schlegel or to appellant; and in such circumstances it

seems just to award to appellee, and to require appellant to pay, only the amount due for the cement shown to have been used by Schlegel after November 4th plus the small balance due on that date.

The judgment will be reversed and the case remanded, with instructions to proceed in accordance with this opinion, and the costs will be divided.

Reversed and remanded.