**BOKA ELECTRICAL CONSTRUCTION COMPANY, Inc., Appellant,**

v.

**W. M. CHAPPELL, INC., Appellee.**

No. 14500.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 24, 1958.

Decided Dec. 24, 1958.

[1.] See claims 18 and 19 of patent application filed November 29, 1947, Serial No. 788,835.

Mr. Harry L. Ryan, Jr., Washington, D. C., for appellant.

Mr. Gordon Allison Phillips, Washington, D. C., for appellee.

Before REED, Associate Justice of the Supreme Court, retired,* and WASHINGTON and DANAHER, Circuit Judges.

REED, Associate Justice, sitting by designation.

Appellee, W. M. Chappell, Inc., contracted with the District of Columbia to build the Hart Junior High School for the District. It thereupon entered into a subcontract with William A. Ruth for him to provide and install all electrical apparatus required under the contract. Ruth encountered financial difficulties and sought to assign his subcontract to appellant, Boka Electrical Construction Company, for completion. Chappell refused to allow the assignment and required Ruth, the original subcontractor, to carry out his contract.

Ruth thereupon made arrangements with appellant Boka to assist him in carrying out his contract. Under those arrangements, material and labor was obtained to finish the contract. Whether the work or the labor was furnished by Boka for the construction or whether Boka acted as a banker lending money to Ruth who hired his own labor and bought his own material was at issue but

---

* Sitting by designation pursuant to the provisions of Sec. 294(a), Title 28 U.S.Code.

not decided below. We shall not undertake to make that decision here.

The issue which we must determine is whether, assuming but not deciding that Boka "supplied labor and material to Ruth, the subcontractor," on this job, Boka was barred from recovery from appellee Chappell, Inc. The trial court ruled that this supplying was "done by the defendant [Boka] for the account of Ruth and not for the account of the plaintiff [Chappell], because no contractual relationship, express or implied, arose as between" Chappell, the prime contractor, and Boka. Chappell's witness who computed payments to subcontractors; "the payment of payrolls;" and was concerned with all suppliers for materials, testified: "We did not pay Boka Electric because in our opinion he could not certify vouchers under the terms of our bond. We had no direct contact with Koka at any time." Appellant Boka claimed a right to recover under the "usual penal" bond given by Chappell to "promptly make payments to all persons supplying him or them with labor and materials" for the construction. District of Columbia Code, § 1–804.

Boka filed a claim with Chappell "for labor and materials provided by it pursuant to agreement with Wm. A. Ruth, one of your subcontractors in completion of the Hart Junior High School." Chappell thereupon brought suit against Boka for a declaratory judgment, "construing the status of Defendant to be that of a lender to the insolvent electrical contractor and a general creditor unsecured by the Plaintiff's contract obligations or bond." The court held that Chappell was not indebted unto the defendant upon the facts found and "the Court's conclusions of law thereupon."

We think it clear that under the Code provisions for a contractor's bond to assure payments to all persons supplying labor and materials for the work under the contract, it is not necessary that the supplier have any contractual relationship with the prime contractor, Chappell in this case. It is sufficient to require payment to the supplier under the contractor's bond if labor or material complying with the prime contract furnished by a supplier to a prime or subcontractor is used by such contractor in the prosecution of the work. This accords with the language of the statute.[1] It is immaterial whether the supplier produces or acquires the material or labor used by the supplier.

It is equally clear too that where a financial institution or a person lends money to a contractor or subcontractor to purchase material or hire labor in order to carry out his, the contractor's contract, no valid claim arises in the lender's favor under the contract bond. It was probably because of this *casus omissus* that Congress has amended the Assignment of Claims Act so as to allow construction loans.[2] It is labor and materials sold to a contractor and used for the job that are covered, not loans.[3]

1. D.C.Code, § 1–804.
   "Any person or persons entering into a formal contract with the District of Columbia for the construction of any public building * * * shall be required, before commencing such work, to execute the usual penal bond * * * with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract * * *."

2. 54 Stat. 1029; 65 Stat. 41; H.R.Rep. No. 2925, 76th Cong. 3d Sess., 31 U.S. C.A. § 203.

3. See Hardaway v. National Surety Co., 211 U.S. 552, 29 S.Ct. 202, 53 L.Ed. 321. There Hardaway agreed to furnish funds to complete the contract and to superintend it in return for the reserve funds and payments under the original contract. The original contractor was not liable to Hardaway. As the original contractor was not liable, the surety was not liable. 211 U.S. at page 561, 29 S.Ct. at page 205, Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, note 1, 37 S.Ct. 614, 61 L.Ed. 1206.

The present Code provision enacted in 1932, 47 Stat. 608, follows closely the language of the Heard Act then in effect to protect suppliers for construction contracts of the United States. 33 Stat. 811. The differences are only those necessary to make it applicable to the District of Columbia.[4] The Congress adopted a suggested amendment of the bill by the District to eliminate the word "subcontractor."[5] As a consequence, decisions of courts other than those of the District under the Heard Act are applicable in construing the provisions of the District Code.

The protection by bond of suppliers and laborers contributing to the construction of federal buildings flowed naturally from the impossibility of allowing the usual materialman's lien on government property.[6] It was and is to be liberally construed to effect its purpose to assure payment to suppliers of material and labor. In United States for Use of Hill v. American Surety Co., 200 U.S. 197, 202, 26 S.Ct. 168, 50 L.Ed. 437, where goods were furnished a subcontractor, the Supreme Court held the language applicable to them. It said:

"Looking to the terms of this statute in its original form, and as amended in 1905, we find the same congressional purpose to require payment for material and labor which have been furnished for the construction of public works. * * There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for. How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished." 200 U.S. at pages 203–204, 26 S.Ct. at page 170.

In Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, the protection of the bond was declared for groceries furnished the contractor to feed the workers under their contract of employment. In Standard Accident Ins. Co. v. United States for Use and Benefit of Powell, 302 U.S. 442, 58 S.Ct. 314, 82 L.Ed. 350, the bond was held to cover freight charges. The Court said:

4. H.R.Rep. No. 781; S.Rep. No. 794, 72d Cong., 1st Sess.

5. 75 Cong.Rec. 13838. The suggestion was as follows:
"On page 2, line 4, strike out the word 'subcontractor.' The parties to the contract for which the bond is required are the District of Columbia and the contractor. Subcontractors may appear after the contract has been executed, but, generally speaking, there is no privity between the municipality and the subcontractor. If the subcontractor becomes a signatory to the contract he becomes a contractor. If by inclusion of the word 'subcontractor' the House Committee on the District of Columbia had in mind protection to the subcontractor furnishing labor and/or materials, it is not believed to be necessary to include the word 'subcontractor' in the text of the act as the extent of the protection afforded by a contractor's bond is indefinite. As to how far the protection afforded by such a contractor's bond extends, see [United States for Use of] Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437 and Mankin v. United States [for the Use and Benefit of Ludawici-Celadon Co.] 215 U.S. 533, [30 S.Ct. 174, 54 L.Ed. 315], in which the United States Supreme Court held that the protection of the contractor's bond extends not only to the immediate subcontractors for the contractor but indefinitely to persons shown to have supplied material or labor entering into the work and who have not been paid. See also Strong v. American Fence Construction Co., 245 N.Y. 48, 156 N.E. 92 (1927)." S.Rep. No. 794, 72d Cong., 1st Sess., p. 2. The House acquiesced. 75 Cong.Rec. 14601.

6. See H.R.Rep. No. 2059, 55th Cong., 3d Sess.; 30 Stat. 906.

"Certainly labor is required for loading freight on railroad cars, moving these over the road, and unloading at destination. A carrier who has procured the doing of all this in respect of material has 'furnished labor.' If a contractor had employed men to move the same kind of material in wheelbarrows, there could be no doubt that he furnished labor. In principle the mere use of cars and track and a longer haul creates no materially different situation." 302 U.S. at page 444, 58 S. Ct. at page 315.

The later Supreme Court cases continue to construe the subsequent United States statutes liberally to assure payment to suppliers. While the national statutes are not worded exactly like the present District statute, the Miller Act, which followed the Heard Act, as originally adopted and as amended, carries forward this idea of broad protection.[7] In United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776, the Miller Act bond was held to cover a contractor's agreement to pay money to the welfare fund of employees.

In a District of Columbia case, Continental Casualty Co. v. North American Cement Corp., 67 App.D.C. 234, 91 F.2d 307, the situation was this. The Cement Corporation at first furnished cement to two contractors on different jobs through a dealer, Potomac Company. Later the dealer was eliminated and the Cement Corporation billed one of the contractors, Lake Stone, directly. He promised to pay for himself and the other contractor, Schlegel. The court upheld the claim against Schlegel's construction bond, saying:

"During the four or five months that the materials here involved were furnished, and after Potomac Company had withdrawn, appellee and Schlegel (through Lake Stone) were dealing solely with one another. To say, therefore, that because of the conditions surrounding the original undertaking the cost of the cement furnished and used in the work is not covered by the bond, is wholly without justification." 91 F. 2d at page 309.

The implication of the case is that the construction bond statute would not cover the sale by Cement Corporation to Potomac Company, a dealer, although resold by it to and used by a contractor, while a sale to a contractor with a guarantee of payment to the supplier by a third party would be covered.

■ We conclude that the appellant, Boka Electrical Construction Company, is entitled to recover under W. H. Chappell, Inc., construction bond for material or labor or both if the trial court finds that either or both had been provided under such an arrangement with Ruth as to make Ruth responsible therefor and used by him on the project. The contrary would be true if the arrangement[8] between Ruth and Boka were a joint venture, or similar undertaking, of such nature that payment to one should equitably be considered as payment to either.

The judgment of the District Court is set aside and the case remanded to that Court for further proceedings not inconsistent with this opinion.

7. 40 U.S.C.A. § 270a and d; MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 105, 64 S.Ct. 890, 88 L.Ed. 1163. The inclusion of suppliers to subcontractors by United States for Use of Hill v. American Surety Co., 200 U.S. 197, 202, 26 S.Ct. 168, 50 L.Ed. 437, was made statutory by a proviso of § 270b(a). H.R. Rep. No. 1263, 74th Cong., 1st Sess; S.Rep. No. 1238, id. For such situations the prime contractor can secure himself by a bond of the subcontractors.

8. The findings of the trial judge do not adequately reveal the nature of the association or arrangement between Ruth and Boka. New and more precise findings should develop the pertinent facts. We do not now decide what those facts were—that is not our function. But we do wish to correct the trial court's misapprehension that Boka was not entitled to recover simply because there had been no contractual relationship between Boka and Chappell.