**HUMPHREYS & HARDING, INC. and Fidelity and Deposit Company of Maryland, Appellants**

v.

**DISTRICT OF COLUMBIA, for the use of The JOSLYN COMPANY, Appellee.**

**No. 16230.**

United States Court of Appeals District of Columbia Circuit.

Argued May 8, 1961.

Decided June 1, 1961.

Petition for Rehearing Denied June 30, 1961.

---

Mr. John L. Kilcullen, Washington, D. C., for appellants.

Mr. Thomas H. McGrail, Washington, D. C., with whom Messrs. Bernard J. Gallagher and J. Roy Thompson, Jr., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

■ Appellants, a contractor and its surety, entered into a payment bond running to the District of Columbia on a bridge construction contract. The contractor placed a verbal purchase order with the L & S Lumber Company, Inc. The latter in turn procured the appellee to treat oak pilings with creosote as called for by the specifications in the contract. The contractor paid L & S, but the latter failed to pay a certain balance due the appellee, Joslyn. After appellants rejected appellee's demand, Joslyn sued and was granted judgment for $6,627.40.

On this appeal, it is argued that since Joslyn had no contractual relationship with the contractor, such services and treatment of the pilings as had been performed for L & S were too remote to found a suit on the contractor's payment bond. It is not disputed that Joslyn rendered the pilings suitable for use in the bridge construction according to contract specifications. The pilings were delivered to and used on the job.

The complaint here was based upon D.C.Code § 1–804 (1951) which provides in part:

> "Any person or persons entering into a formal contract with the District of Columbia for the construction of any public building * * * shall be required * * * to execute the usual penal bond * * * with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract * * *." [1]

The Supreme Court has pointed out that the Heard Act and similar statutes have generally been given a liberal interpretation so as to protect those who

---

[1]. Cf. the Heard Act, 33 Stat. 811, 812 (1905):

"* * * any person or persons entering into a formal contract * * * for the construction of any public building * * * shall be required * * * to execute the usual penal bond * * * with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract * * *."

have contributed by their labor and material to the erection of public structures. "If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials." [2]

Appellants, in effect, would have us read our Code section, supra, as though it contained the proviso to be found in section 2(a) of the Miller Act.[3] They argued that since the purposes of the two statutes are the same, they must be read and applied alike. The short answer is that Congress has never so conditioned our payment bond section. Moreover, treating our Code section as remedial, we pointed out in Boka Electrical Construction Co. v. W. M. Chappell, Inc.:

"It is sufficient to require payment to the supplier under the contractor's bond if labor or material complying with the prime contract furnished by a supplier to a prime or subcontractor is used by such contractor in the prosecution of the work. This accords with the language of the statute. It is immaterial whether the supplier produces or acquires the material or labor used by the supplier." [4]

Despite such recent discussion, appellants argue on brief that a contractor's bond should not protect "persons supplying labor or materials to another materi-

alman." Such coverage would extend, it is urged, to a hardware concern which sells a keg of nails which finds its way to the job, a relationship not only remote but one leading to confusion.[5]

We are not dealing with a keg of nails. On the contrary, the specifications of the contract here read:

"All piles shall be creosote treated timer friction piles conforming to the materials requirements of Articles 2.16.1 and 2.16.2 of the Standard Specifications. The piles are to be driven to such resistance as is necessary, in the opinion of the Engineer, to safely sustain a load of 25 tons."

These pilings were specially shaped and creosote treated for this very job. They were accepted and utilized in the bridge construction by the contractor. We are unable to accept the suggestion that L & S was a mere materialman rather than a subcontractor to Humphreys & Harding, Inc. After the latter had made full payment to L & S, L & S paid more than $9,000 to Joslyn, leaving unpaid the balance for which recovery was granted. As was pointed out in Boka, the contractor readily could have secured itself by a bond from L & S, and other practical, protective steps will readily suggest themselves.

■ Suffice it to say, as in Boka, it is not here necessary that the supplier have any contractual relationship with the prime contractor. The Code makes clear that the obligation of the bond requires that the "contractor or contractors" make prompt payment to all persons "supplying him or them with labor and materials in

2. United States for Use and Benefit of Hill v. American Surety Co., 1906, 200 U.S. 197, 205, 26 S.Ct. 168, 171, 50 L.Ed. 437.

3. 49 Stat. 793 (1935), 40 U.S.C.A. § 270a, construed in MacEvoy Co. v. United States, 1944, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163.

4. 1958, 104 U.S.App.D.C. 407, 409, 262 F.2d 718, 720.

5. This argument is related to dictum in Continental Casualty Co. v. North American Cement Corp., 1937, 67 App.D.C. 234, 235, 91 F.2d 307, 308, where we also said: "For the present, at least, we are unwilling to construe the local statute as going to that extent." Even so, we recognized that elsewhere the rule was otherwise. Compare note 3 in MacEvoy v. United States, supra note 3, 322 U.S. at page 105, 64 S.Ct. at page 892.

In the Boka case, supra, we limited Continental to its facts.

the prosecution of the work provided for in such contract."

■ "And we are committed to the doctrine that [the statute] should be liberally construed in aid of the evident public object—security to those who contribute labor or material for public works."[6]

Affirmed.

---

6. Standard Acc. Ins. Co. v. United States, 1938, 302 U.S. 442, 444, 58 S.Ct. 314, 315, 82 L.Ed. 350.