UTAH CONST. CO. et al. v. UNITED STATES, to Use of LINDSTROM (DANIEL CONTRACTING CO. et al., Interveners).

(Circuit Court of Appeals, Ninth Circuit. October 11, 1926. Rehearing Denied November 15, 1926.)

No. 4788.

1. **United States** ⚖=67(3).

Evidence *held* to support findings that hire of boats and labor furnished for hauling sand entered into construction of weir for federal government, and came within terms of contractor's bond required by Act Feb. 24, 1905 (Comp. St. § 6923).

2. **United States** ⚖=67(2).

Act Feb. 24, 1905 (Comp. St. § 6923), requiring bond for persons contracting with United States for public works, *held* broad enough to cover material and labor furnished by materialman or subcontractor.

3. **United States** ⚖=67(3).

In action on contractor's bond required by Act Feb. 24, 1905 (Comp. St. § 6923), allowance of agreed rental for tug during period of disuse under agreement with subcontractor for payment until tug could be floated out of river, *held* not unreasonable.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Action by the United States, for the use and benefit of H. Lindstrom, against the Utah Construction Company and another, wherein the Daniel Contracting Company and another intervene. Judgment for plaintiff and interveners, and defendants bring error. Affirmed.

This was an action at law by Lindstrom, relator, in the name of the United States, upon a bond executed by the Utah Construction Company and the Ætna Casualty & Surety Company, to secure the performance of a contract made by the construction company with the United States.

The Act of February 24, 1905 (33 St. L. 811 [Comp. St. § 6923]), under which the bond was executed, is for the protection of persons "furnishing materials and labor for the construction of public works." It provides that any person entering into a formal contract with the United States for the construction and completion of any public work shall be required to execute the usual penal bond with good and sufficient sureties, with the additional obligation that such "contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public * * * work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon."

Lindstrom alleged that the United States entered into a contract with the defendant Utah Construction Company for the construction of a certain weir; that the bond was executed; that large quantities of sand and gravel were needed for the prosecution of the work; that the Utah Construction Company employed a concern called Wattis-Samuels Company, a corporation, to furnish sand and gravel, and through that corporation one Paul to furnish the same; that the sand and gravel were obtained by loading them on barges two or three miles from where the weir was constructed; that the barges were towed to the place of construction, and that the sand and gravel and transportation entered into and became a part of the construction of the weir and were necessary in the prosecution of the work of construction; that the relator was owner and operator of a tugboat and was hired by the Utah Construction Company by and through Wattis-Samuels Company and Paul, to tow the barges with the tugboat at an agreed rate of $1,200 per month, the contract to continue until he was able to float his tugboat away from the location where the work was done, there being insufficient water therefor in the Sacramento river until after the fall rains, which condition did not occur until January 29, 1924; that relator was also to receive $3 per hour for each hour overtime work by the tugboat. It is alleged that final settlement between the United States and the Utah Construction Company was made, but that there is due to Lindstrom by the Utah Construction Company and the Ætna Casualty & Surety Company $6,122.

Intervener Daniel Contracting Company alleged that Paul, while employed to furnish sand and gravel, chartered lighter No. 27 from the intervener at a monthly rental of $500; that the lighter was used in transporting said sand and gravel to the weir for 4¹/₆ months. Intervener Henry C. Peterson, Inc., alleged that, while the sand and gravel were being transported, Paul chartered barge Peterson No. 46 and barge Peterson No. 14 at a monthly rental of $250 each, and that the barges were used in transporting such sand and gravel to the weir for 2¼ and 4¹/₆ months, respectively. Both interveners alleged that the means of transportation entered into and were used in the construction of the weir.

The answers denied that the Utah Construction Company ever employed Wattis-Samuels Company or Paul to furnish sand and gravel, averred that the Utah Construction Company made a contract with Wattis-Samuels Company to furnish all material necessary to do certain concrete work for a certain fixed price and that Wattis-Samuels Company made a contract with Paul whereby he agreed to sell them sand and gravel and to deliver the same, they to pay for the sand and gravel at a specified rate; that some of the sand and gravel used in the construction of the weir was brought to the bank of the river near to the place of construction but not thereto. Defendants denied that delivery was continued until the weir was completed, and alleged that, by reason of Paul's failure to make delivery, Wattis-Samuels Company was obliged to buy sand and gravel from other persons for use on the weir; denied that the transportation entered into and became part of the construction of the weir; alleged that neither the defendant nor any subcontractor made any agreement for the transportation alleged, and that, if such transportation was furnished by relator, it was under a contract between him and Paul, and that Paul or his assignee was paid for all sand and gravel delivered by him to Wattis-Samuels Company. It is denied that the relator was hired or employed by the defendant.

Answers to the complaints of the interveners were based upon the general grounds

just stated, together with allegations that the transportation provided by the use of the lighters was furnished, if at all, for the sole account of Paul.

The case was tried to the court. Findings were as to the truth of the construction contract between the United States and defendant, and the contract to furnish all material, and do the work between defendant and Wattis-Samuels Company. Additional findings were that there was a deposit of sand and gravel in the bed of the Sacramento river about two miles from the site of the weir; that the Wattis-Samuels Company desired to use the sand and gravel in the construction of the weir, and that it was necessary to use a dredge and to transport the sand and gravel on barges and lighters; that the Wattis-Samuels Company, for the purpose of procuring the sand and gravel, made a contract with Paul to dredge from the deposit all sand and gravel necessary in the construction of the weir and to transport the same to such points on the Sacramento river adjacent to the site of the weir as should be designated by the Wattis-Samuels Company, and to unload and put the sand and gravel on the shore near the weir and to provide men, barges, towboats, equipment and labor necessary therefor.

In substance, the contract between Paul and the Wattis-Samuels Company provided that Paul should furnish and deliver to the Wattis-Samuels Company certain quantities of sand and gravel requisite for construction of the weir, and any additional quantities that might be required for such construction in such quantities and at such times as the Wattis-Samuels Company might need them, delivery to be on the bank of the river at a certain distance from the water's edge. The Wattis-Samuels Company agreed to pay, and Paul agreed to accept a fixed price for sand and gravel furnished and delivered on the bank of the Sacramento river at the location designated, measurements to be made before unloading. Paul was to be prepared to deliver on or before a time named, and was to furnish all the necessary men, barges, dredger, towboats, equipment, and labor necessary for the dredging, transporting, and delivering of said sand and gravel.

The court found that Paul dredged the sand and gravel and transported and delivered them to Wattis-Samuels Company on lighters, towed by the relator with his towboat, as directed by Wattis-Samuels Company; that Paul supplied the men and all equipment, and that the sand, gravel, boats, and labor were actually used and employed in the

construction of the weir; that it was necessary to use a tugboat to tow the barges, and that relator was employed by Paul to tow the barges for certain monthly compensation, to continue until the relator could get his tugboat out of the river, which he was not able to do until January 29, 1924; and that the relator was entitled to certain added compensation for overtime. It was found that the Daniel Contracting Company's barge and the barges of the Peterson Company were used in the work over periods of time under charters, and that the rentals named were reasonable.

The court concluded that the transportation provided by Lindstrom entered into and became a part of the construction of the weir, and that Lindstrom was entitled to judgment as prayed for, with interest; that the transportation provided by the Daniel Contracting Company and Peterson, Incorporated, was furnished to be used and was used in the construction of the weir.

Judgment was entered for the relator and the interveners.

B. M. Aikins, of San Francisco, Cal., for plaintiffs in error.

H. W. Hutton, Fletcher G. Flaherty, and Brobeck, Phleger & Harrison, all of San Francisco, Cal. (Gregory A. Harrison, of San Francisco, Cal., of counsel), for defendants in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The contention of the plaintiffs in error, that the findings of fact set forth in the statement are wholly unsupported by evidence, cannot be sustained. The testimony is that, before the execution of the contract with Paul, Samuels, vice president and general manager of the Wattis-Samuels Company, met Paul; that Paul told him that he expected to secure material for the weir from the bed of the Sacramento river; that thereafter Samuels investigated the probability of there being sufficient sand and gravel in the bar to build the weir; that Samuels considered the quality of the material and understood that it was to be furnished by Paul and was to be taken from the bed of the river; that Samuels was advised that the deposit would be dredged and thereafter the sand and gravel would be delivered. It also appeared that Paul dredged the sand and gravel and transported them to the site of the weir in barges belonging to the interveners, towed by the boat of Lindstrom, the relator; that he furnished and operated the derrick barge

which was used under the direction and supervision of the contractor; that he also furnished equipment and labor necessary for the rendition of the services of the dredge and barges.

[2] The argument that Paul was only a vendor of material to a subcontractor and that those whom he employed cannot avail themselves of the protection of the bond, is too restrictive of the language of the statute. Under the facts, Paul furnished material and labor with the understanding that it was to be used in the construction of the weir by the contractor, and beyond a doubt it was used in the performance of the contract. The fact that the contract with Paul provided for compensation computed upon the quantity of material transported does not necessarily affect the question; nor, indeed, would it exclude his relationship as that of a subcontractor. United States to the use of Boyer et al. v. Port Deposit Quarry et al. (D. C.) 272 F. 698; Ryndak v. Seawell, 13 Okl. 737, 76 P. 170. But as he did supply material and labor which were used, whether he be called a materialman or a subcontractor supplying labor is not of vital importance, for the statute is broad enough to afford protection to him and the relator.

In Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437, the Supreme Court considered the two views—one that the bond should be strictly construed and recovery limited to those who had furnished material or labor directly to the contractor; and the other that recovery should be allowed by those who had furnished labor or material which had been used in the prosecution of the work, whether furnished under the contract directly to the contractor or to a subcontractor. It was held that the obligation should be construed in the light of the manifest purpose of the statute to require that material and labor actually contributed to the construction of the work should be paid for and that a security should be provided to that end. The court said: "There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor but all persons supplying the contractor with labor or material in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for." It was also said that, if a construction were given to the bond by limiting the obligation so as to permit only

those to recover who have made contracts directly with the principal, it might happen that the material and labor which had contributed to the structure would not be paid for, and that by a default of subcontractors the manifest purpose to require compensation to those who had supplied such labor or material would be defeated. The language of the statute was regarded as giving protection of those who supply labor or material provided for in the contract and not "to the particular contract or engagement under which the labor or materials were supplied."

Again, in Mankin v. United States, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315, the court construed the statute. There the Mankin Company contracted with the Secretary of the Treasury to construct a building and gave bond as required by the statute, and such as was given by the Utah Construction Company in the present case. Mankin Company made a contract with one Smythe as subcontractor, by which Smythe agreed "to furnish" certain gas fittings and other material to be used in the construction of the building. Some of the claimants sold to Smythe certain materials which he used in the construction of the building as required by the original contract. Smythe failed to make full payment, and claimants brought action against Mankin Company and its sureties. The court, citing Hill v. American Surety Co., supra, held that one who furnishes labor or material for carrying out a contract for a public work, although such materials were furnished to subcontractors to whom a part of the work had been let, could recover upon a bond given under the act. The court rejected the contention that only those who furnished labor or materials directly to the contractor could claim the benefit of the act, and repeated what had been said in the Hill Case, that "the contractor can protect himself by requiring a bond securing him against liability on account of engagements of the subcontractor with persons who furnish labor and material upon his order."

In United States Fidelity & Guaranty Co. v. Bartlett, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200, the United States contracted with one Donovan for the construction of a breakwater. Donovan executed the bond containing the obligation required by the act with the United States Fidelity Company as surety. Donovan was associated with certain others, who arranged with Bartlett that he should engage the labor, open a quarry, and superintend the furnishing of stone for the construction of the breakwater. The quarry was operated, the stone was loaded on scows and

transported to the breakwater according to the direction of a government inspector. It was held that the bond given pursuant to the statute for a contract covered the claims for labor on work at the quarry and for hauling and delivering the stone. The court said: "The work involved in the claim here made was all necessary to the performance of the contract, and in our view comes clearly within the class of labor accounts, the satisfaction of which it was the purpose of the act of Congress to secure by a proper bond."

In Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, the court again held that the bond given under the statute must be construed liberally for the protection of those who furnish labor or material in the prosecution of a public work, and, in the very recent case of Fleischmann Construction Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 254, the court referred to the purpose of the act as "highly remedial" and said that it must be construed liberally, that it was to provide security for the payment to all persons who supply labor or material in a public work; that is, "to give the creditors a remedy on the bond of the contractor, to be enforced within a reasonable time in a single proceeding in which all claimants shall unite." Gilmore v. Westerman, 13 Wash. 390, 43 P. 345; Pavarini v. Title Guaranty Co., 36 App. D. C. 348; School District v. Hallock, 86 Or. 687, 169 P. 130; City of Portland v. New England Casualty Co., 78 Or. 195, 152 P. 253; Willey v. St. Charles Hotel Co., 52 La. Ann. 1581, 28 So. 182; Brink v. Bartlett, 105 La. 336, 29 So. 958.

[3] It is said that the judgment in favor of relator is excessive in allowing compensation for the use of his boat from October 17, 1923, to January 29, 1924. The evidence is that Paul paid the relator up to September 1, 1923, and that relator ceased hauling the barges carrying material for the weir on October 17, 1923. But it is also in evidence that the distinct agreement with Paul was that relator was to be paid the compensation agreed upon, $1,200 a month, until he could float his tug out of the river. Low water conditions were such, however, that he could not get the boat out until January 29, 1924. Considering then that the use of the tug was the most practical means of getting the sand and gravel to the weir, we think the contract between Paul and Lindstrom was not an unreasonable one, and that the allowance made up to the time the tug was floated was just and proper. Brogan v. National Surety Co.,

supra; Taylor v. Connett (C. C. A.) 277 F. 945.

We conclude that the case is fairly within the expression of Justice Day in Hill v. American Surety Co., supra: "If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

With respect to the judgment in favor of the interveners, no error was assigned; hence the allowances made to them will not be disturbed.

We find no error, and affirm the judgment.