**UNITED STATES ex rel. PARK L. DAVIS CO. v. MATTHEW CUMMINGS CO. et al.**

**No. 7240.**

District Court, D. Massachusetts.

April 28, 1939.

406

Jos. Joyce Donahue, of Boston, Mass., for plaintiff.

Richard J. Lane, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This action is brought for the benefit of Park L. Davis Company (hereinafter referred to as the "plaintiff") to recover from the defendant Matthew Cummings Company (hereinafter referred to as the "Cummings Co.") and the sureties on a payment bond, given in connection with a contract entered into between the Cummings Co. and the United States.

The action is brought under Sec. 2, Ch. 642 of the Act of August 24, 1935, 49 Stat. 794, 40 U.S.C.A. § 270b (a).

1. On July 14, 1936, the Cummings Co., as principal, and the several surety companies named as defendants, executed and delivered to the United States a bond in the penal sum of $1,991,868, conditioned upon the prompt payment to all persons supplying labor and material in the prosecution of the work provided for in a certain contract entered into between the Cummings Co. and the United States, dated July 14, 1936, for the construction of the superstructure for Old Harbor Village, Project No. H-3302, in Boston, Massachusetts.

2. Subsequently the Cummings Co. entered into a contract with the Power Heating & Ventilating Company (hereinafter referred to as the "Power Company") covering the installation of the heating and ventilating system of said Old Harbor Village project.

3. The Power Company entered into two contracts with the plaintiff, evidenced by the following purchase orders:

"We hereby accept your quotation dated June 28, 1937 for furnishing and installing forced draft and ducts for three boilers at the above job for the amount of four thousand five hundred dollars $4500.00. The above to be in accordance with plans and specifications."

"We hereby accept your quotation dated June 28, 1937 for furnishing and installing sheet metal work and also for installing 54 fans in connection with the above job. The amount to be eight hundred twenty-five dollars ($825.00).

"The above to be in accordance with plans and specifications."

The plaintiff completed its part of said contract and has received on account of the contract price $4300, leaving a balance of $1025 due the plaintiff under these contracts. The Power Company concedes extras amounting to $33.53.

The controversy arises over plaintiff's claim for labor and material furnished the work which, it alleges, was not included in either of the contracts. The bill rendered the Power Company for this extra work may be reduced to the following items:

| | |
|---|---|
| Item No. 1. | Providing 42 offsets due to holes in the boiler not coming as per plan .............................. $114.60 |
| Item No. 2. | Providing Lower Chamber Plates under boilers ..................... 406.55 |
| Item No. 3. | Reconstructing 27 Automatic Louvres ......................... 74.38 |
| Item No. 4. | Changing braces for 13 fans..... 71.39 |
| Item No. 5. | Square to Round on roof of Boiler House ........................ 34.13 |
| Item No. 6. | Square to Round Hopper for Boiler House ..................... 20.36 |
| Item No. 7. | Plate to cover opening in side wall of Power House............. 52.06 |

I find all of this work was done as alleged and that the prices charged were reasonable.

4. The defendants contend that Items Nos. 1 and 2 are covered by the contract to install forced draft ducts, and that Items Nos. 3 and 4 by the contract to install the 54 small fans. As to Items Nos. 5, 6 and 7, these are for work clearly outside of the contract. The defense is that plaintiff did not receive written orders for the work, as required by the contract between the United States and the Cummings Co.

5. Item No. 1.—I find that the plans upon which plaintiff's offer was submitted showed that the ducts would lead straight from the risers into the side of the steel casing which constituted a part of the boiler setting. It was found that, due to an error on the part of another sub-contractor under the Power Company, the location of the vent openings in the side of the steel casing made it necessary to provide offsets, since it was impossible to change the location of the risers.

The situation was not due to any fault of the plaintiff and was one which it could not reasonably have foreseen and over which it had no control.

I find that this item is for labor and materials not required by the contract and is properly claimed as an extra.

6. Item No. 2.—Under the three boilers was an air-chamber into which the ducts entered at one end. It appeared that either the Power Company or one of its many sub-contractors had failed to provide a plate which constituted one side of this chamber. It is contended that it was a part of the plaintiff's contract to furnish and install these plates. There is nothing in the specifications or plans to support this contention. The specifications indicate otherwise. The representative of the Power Company, who was on the work, testified that these plates were not a part of the duct system and that he ordered the plaintiff to furnish them in order that they could be provided without delay.

I find that this claim is for labor and material outside of the contract.

7. Item No. 3.—The plaintiff's contract did not require it to furnish the 54 fans mentioned in its contract, but only covered installation. The fans were furnished by another sub-contractor, and when they arrived it appeared that, in some of them, the Louvre blades would not automatically open and shut because they came in contact with the blades of the fan. To overcome this difficulty, plaintiff had to reconstruct the devices and it has charged the expense as an extra.

I find that this work was not required by plaintiff's contract.

8. Item No. 4.—This relates to changes made in the brackets to hold the fans. The specifications contained the following provisions: "Where openings are provided in a previous contract, and the installation of channel iron frame as detailed is impossible on account of the size of the opening, the Contractor shall submit for approval a shop drawing showing proposed method of installing and anchoring a suitable frame. This deviation from contract plans, if necessary, shall involve no change in contract price."

As to this item, I think that if the plaintiff went ahead and built these brackets without first finding out whether they would be suitable, it did so at its own risk. In this respect it is bound by the provisions of the contract and the deviation can involve no change in the contract price.

I find that the plaintiff is not entitled to claim this item as an extra.

9. Items Nos. 5, 6 and 7.—There is no room for the contention that this work came within either of the contracts between

the plaintiff and the Power Company. Whether it was a part of the Power Company contract with the Cummings Co. is not clear. That contract is not in evidence. It does appear, however, that the Cummings Co. and the superintendent for the Power Company regarded these items as properly within the Power Company contract, and, in order not to delay the work the superintendent, acting for the Power Company, ordered the plaintiff to do the work, and in response to that order the work was done.

10. With respect to all of these items, except Item No. 4, I find that all of the work was done upon the express oral order of the superintendent representing the Power Company on the work. For none of the work was any written order given.

The only question remaining in this case is whether the failure to obtain written orders will defeat the right of the plaintiff to the protection of the statute. There can be no doubt that it has furnished labor and material in the prosecution of the work provided for in the contract between the United States and the Cummings Co. It is true that the contract provided that no charge for extra work or material would be allowed unless the same had been ordered in writing by the contracting officer and the price stated in such order. This provision would undoubtedly require the Cummings Co., before it ordered work not provided for in its contract with the United States, to procure a written order if it expected to charge extra for that work. It does not follow, however, that one who, upon oral requests or oral orders of a sub-contractor, furnishes labor and material in the prosecution of the work provided for in the contract secured by payment bond, cannot look to that bond for his payment. If the work is a public work and the labor and material has been furnished in the prosecution of that work, the case comes within the statute, and the person furnishing the labor and material may avail himself of its benefits. This conclusion finds support in recent decisions. United States v. Morley Construction Co., 2 Cir., 98 F.2d 781. The courts have been liberal in applying the law. United States, for Use of Hill v. American Surety Co. of New York, 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437; Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A.1918D, 776; Mankin v. United States, for Use of Ludowici-Celadon Company, 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed.

315; Standard Accident Ins. Co. v. United States, for Use and Benefit of Powell, 302 U.S. 442, 58 S.Ct. 314, 82 L.Ed. 350.

The plaintiff, therefore, is entitled to recover in this action the sum of $1766.31 with interest thereon.

Judgment may be entered accordingly.