## UNITED STATES v. CONTINENTAL CASUALTY CO.

District Court, S. D. New York.

April 20, 1940.

McCormick & Eckel, of New York City (Andrew Eckel, of New York City, of counsel), for defendant.

COXE, District Judge.

This is an action for $672.89 on a bond indemnifying the government against loss from the issuance of a duplicate veteran's adjusted service certificate. Both parties have moved for summary judgment on the pleadings and supporting affidavits. The material facts are not in dispute, and the question is whether the loss asserted by the government is within the coverage of the bond.

On July 1, 1925, an adjusted service certificate, No. 2,773,601, for $1,537 was issued to Marion Schley Davis, a veteran. Thereafter, the veteran applied to the Veterans Bureau for the issuance of a duplicate certificate on a showing that the original had been lost or destroyed. With the application the veteran submitted an indemnity bond executed by himself as principal, and by the defendant as surety. This is the bond on which the present action is based; it was accepted by the Veterans Bureau, and on April 3, 1928, a duplicate certificate, No. 3,334,075, in the same amount as the original, was issued to the veteran.

The bond recites that it is given pursuant to the requirement of the World War adjusted Compensation Act, 38 U.S.C.A. § 591 et seq. The condition of the bond is as follows: "Now Therefore, The Condition Of This Obligation Is Such, that if the above bounden obligors, their heirs, executors, administrators, successors, or assigns, or any of them, shall pay or cause to be paid to the United States any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate or any part thereof, and shall well and truly indemnify and save harmless the United States from any claim on account of said Adjusted Service Certificate and from all damage, loss, costs, charges, and expenses which the United States may sustain, incur, or be liable for in consequence of any such claim or of the granting of relief on account of said Adjusted Service Certificate, with interest from the date of such payment, and any and all costs and expenses incurred in connection therewith, then this obligation

John T. Cahill, U. S. Atty., of New York City (Noel Hemmendinger, Asst. U.S. Atty. of New York City, of counsel), for plaintiff.

to be void; otherwise to be and remain in full force and effect".

The veteran died on November 11, 1930, and the Veterans Bureau thereafter made a settlement with his widow, who was the designated beneficiary of the duplicate certificate, No. 3,334,075, paying to her the face amount of the certificate, less a small amount of loan indebtedness thereon.

On March 2, 1931, and after the settlement with and final payment to the veteran's widow, the original certificate, No. 2,773,601, was hypothecated for a loan of $516.22 by a person representing himself to be the veteran. The imposter executed a promissory note in the name of the veteran, receiving a Treasury check for $516.22, drawn on the Treasurer of the United States, and payable to the order of the veteran. The endorsement of the check was forged by the imposter, and the check was paid on March 19, 1931, by the Treasurer of the United States.

On January 20, 1938, the Controller General certified that the estate of the veteran was indebted to the United States for the amount of the loan of $516.22, made to the imposter on the original certificate, No. 2,773,601, with interest at 4½% to November 20, 1937, less a credit of $19.87, or a total of $672.89. Demand for payment was made on the defendant on April 27, 1938, and on failure of the defendant to respond the present action was commenced.

Section 502 of the World War Adjusted Compensation Act, as amended, 38 U.S.C. § 642, 38 U.S.C.A. § 642, authorizes limited loans to be made to a veteran on his adjusted service certificate, but only through specifically prescribed channels. Section 503 of the same Act, 38 U.S.C. § 643, 38 U.S.C.A. § 643, expressly declares that such a certificate shall not be "negotiable or assignable or serve as security for a loan", except as provided in the preceding section. Section 705, 38 U.S.C. § 649, 38 U.S.C.A. § 649, provides for the issuance of a duplicate certificate where a certificate has been lost or destroyed, on filing an indemnity bond with sureties, "with condition to indemnify and save harmless the United States from any claim upon such lost or destroyed certificate".

■ I think it is clear that the bond required by Section 705 is one protecting the government from valid enforceable claims by third parties on the lost or destroyed certificate. The section provides

that the bond shall be conditioned "to indemnify and save harmless the United States from any claim upon such lost or destroyed certificate". This means that the obligors on the bond are required at their own cost to defend any claim against the government on the certificate, and pay the amount of such claim when it is established. Under the express language of the statute, the certificate was neither negotiable nor assignable. The most common risk, therefore, to be guarded against was a loan obtained by the veteran on the original certificate, after the duplicate had been issued. The banking institution making such a loan would in such a case have a valid enforceable claim against the government, which would be protected by the bond. It was against claims of that character that the bond of the statute was intended to cover, not claims resulting from the government's own acts.

■ The bond itself is to be read in the light of the statute. United States to Use of Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437. It first provides that the obligors "shall pay or cause to be paid to the United States any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of any valid adverse claim to the proceeds of the above described adjusted service certificate." There is here a recognition by the government that the claim protected against is not only a "valid adverse claim", but that the obligors will be required to pay "on the establishment" of any such claim. The bond then proceeds in elaborating language to state that the obligors "shall well and truly indemnify and save harmless the United States from any claim on account of said adjusted service certificate". I think that the words "any claim" in this quoted language have reference to the preceding words "valid adverse claim"; as so construed, the entire language of the bond harmonizes with what I believe to be the correct interpretation of Section 705.

■ With this construction of the bond, it is plain that the government cannot succeed in the action. The loan to the imposter was made after the veteran's death, and after the final settlement by the government with his widow. The veteran's signature on the note was a forgery. So, also, was the endorsement of the veteran's name on the check. The bond did not

protect the government from loss resulting from forgery but only from valid enforceable claims on the certificate. I do not think that the present claim is such a claim.

The motion of the government for summary judgment is denied, and the cross-motion of the defendant for similar relief granted.