## UNITED STATES v. HARTFORD ACCIDENT & INDEMNITY CO.

### No. 172.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1941.

Valentine J. Sacco, Asst. U.S. Atty., of Hartford, Conn. (Francis M. Shea, Asst. Atty. Gen., Robert P. Butler, U.S. Atty., of Hartford, Conn., and Leavenworth Colby, Atty., Department of Justice, of Washington, D.C., on the brief), for the United States.

Walfrid G. Lundborg, of Hartford, Conn. (Shipman & Goodwin, of Hartford, Conn., on the brief), for defendant-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In 1927, Frank K. Taylor, a veteran, applied for a duplicate of his adjusted service certificate, on the ground that the original had been lost, and, as required by statute, 38 U.S.C.A. § 649, gave a bond, with the defendant herein as surety, to protect the plaintiff against claims on the original certificate. After the duplicate had been issued, Taylor proceeded to borrow on it from plaintiff on four different occasions from 1927 to 1931. He then obtained final payment of the balance

in July, 1936. Meanwhile, in 1930 and 1931, through other field offices of the Veterans' Administration, he procured loans from plaintiff on his original certificate, and in June, 1936, effected final settlement upon it. Not surprisingly his whereabouts is now unknown. Plaintiff made demand on defendant for reimbursement and brought this action when defendant refused payment. Trial was had upon stipulated facts, as a result of which the district court denied recovery because no intention was expressed in unequivocal terms in the bond to indemnify the obligee against its own negligence. D.C. Conn., 33 F.Supp. 859.

◼ The statute cited requires a bond, "with condition to indemnify and save harmless the United States from any claim upon such lost or destroyed certificate." The bond itself is stated to be a "Bond of Indemnity to the United States * * * To secure the United States against payment of any sum whatsoever on account, of the issuance of" the adjusted service certificate in question, identified by number, amount, and the veteran's name. The recitals in the bond refer to the occasion for its execution upon Taylor's loss of his original certificate and state that it is required by the Director of the United States Veterans' Bureau "by virtue of the World War Adjusted Compensation Act." From the condition of the bond, it appears that the obligors agree to repay plaintiff for sums it has paid "on account of the establishment of any valid adverse claim" to the proceeds of the original certificate and also to save plaintiff harmless from "any claim" and from "all damage, loss, costs, charges, and expenses" which plaintiff may sustain "or be liable for in consequence of any such claim," and "any and all costs and expenses incurred in connection therewith."[1]

This inclusive provision in terms covers not only valid claims, but also any claims whatsoever, and any and all costs incurred in connection with any claims. Plaintiff suggests that the form of the bond thus including alternatively any valid claim and then any claim was adopted to guard against the contingency, among others, that an approval by the Veterans' Administration under 38 U.S.C.A. § 641 of the designation of different beneficiaries under the two certificates might be held final and binding upon the Government under 38 U.S.C.A. § 620. Butte, A. & P. Ry. v. United States, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222, and United States v. Great Northern Ry., 287 U.S. 144, 53 S.Ct. 28, 77 L.Ed. 223, had so held as to certain determinations of the Interstate Commerce Commission. Under the view more recently stated in United States v. Bentley, 2 Cir., 107 F.2d 382, that the Veterans' Administration may correct errors in its determinations, this provision would no longer be necessary. But, whatever the history of the provision, the intent to cover different forms of liability is so clear that we see no justification for restricting it by reading into it something not there expressed. Particularly is this so when the claimed construction apparently takes away all substantial effect of the bond.

Defendant's theory is that the later language of the condition merely amplifies the first provision and therefore refers only to a valid adverse claim. In the companion case herewith, United States v. Continental Casualty Co., D.C.S.D.N.Y., 33 F.Supp. 65, this day reversed in 2 Cir., 117 F.2d 506, the court accepted that view, although the court herein rejected it for

---

[1] The condition clause is as follows: "Now, therefore, the condition of this obligation is such, That if the above bounden obligors, their heirs, executors, administrators, successors or assigns, or any of them shall pay or cause to be paid to the United States any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate or any part thereof and shall well and truly indemnify and save harmless the United States from any claim on account of said Adjusted Service Certificate, and from all damage, loss, costs, charges, and expenses which the United States may sustain, incur, or be liable for in consequence of any such claim or of the granting of relief on account of said Adjusted Service Certificate with interest from the date of such payment, and any and all costs and expenses incurred in connection therewith, then this obligation to be void; otherwise to be and remain in full force and effect." A further paragraph contains an agreement by the principal to furnish a new bond in case the surety herein "should not, for any reason, in the opinion of the Director, United States Veterans' Bureau, afford the United States sufficient protection and security."

the view that the obligee's negligence was a bar. The arguments of defendants before us in both cases apparently tend to favor the former theory; these diversities of view perhaps illustrate the difficulties of rationalizing a restriction on the broad language of the bonds. A further difficulty arises because of the necessary concession that costs incurred by plaintiff in contesting an invalid claim are recoverable. Such a construction requires a discrimination in that the word "claim" used in the alternative part of the condition carries two distinct and different meanings.

To meet the point that the interpretation of the bond made below leaves it practically without effect, defendant asserts that a bank which has made a loan with a certificate as security, as provided in 38 U.S.C.A. § 642, may recover upon that certificate, even though it had already been cancelled. But we think the legal basis of that argument doubtful, and its persuasive force in any event limited. The statute, 38 U.S.C.A. § 643, provides that no certificate shall "be negotiable or assignable or serve as security for a loan," except as provided in § 642, and that "any negotiation, assignment, or loan made in violation of any provision of this section shall be held void." Thus, only a limited assignability at most is granted. Assignability under § 642 to secure a bank loan would exist only to the extent required to subserve the purposes of that section of the statute. There is nothing in the section which requires negotiability for an original certificate, which has been cancelled upon the issuance of a duplicate. Moreover, the Administrator has discretion whether he shall redeem the certificate from the bank, but is not required to do so. § 642(c). Presumably he will not exercise such discretion if the security to which he looks for the payment of losses, namely, the surety bond, fails to provide it. But even if this view of the statute is not correct, the fact that the bond may afford some protection to a bank under the circumstances, we think, is not sufficient reason to restrict its coverage in other circumstances at least as important to the obligee.

■ It is further contended that the bond as thus construed exceeds the coverage required by the statute under which it is given. A bond given pursuant to a statute should naturally be construed to provide the coverage which the legislature has required as a condition of the right or relief which the statute gives. United States to Use of Hill v. American Surety Co., 200 U.S. 197, 205, 26 S.Ct. 168, 50 L. Ed. 437; United States v. Hamilton, 7 Cir., 96 F.2d 878, 117 A.L.R. 446. We do not see why this should prevent the parties from making additional agreements if they choose. But be that as it may, we are not impressed with the contention that "any claim upon such lost or destroyed certificate" means only a valid claim pursuant to the certificate. That seems to us a strained and unnatural construction of the language; more naturally it would mean that the United States should be "saved harmless" "from any claim" made against it upon the basis of, or having as its subject-matter, the lost certificate.

■ The cases relied upon by the district court, such as Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen, 5 Cir., 74 F.2d 983, and United States v. Wallace, 9 Cir., 18 F.2d 20, to support the conclusion that the obligee's own negligence bars recovery depend on circumstances too different to be persuasive here. They may be matched by other decisions upholding wide coverage, particularly on bonds given to the Government. Hart v. United States, 95 U.S. 316, 318, 24 L.Ed. 479; Jones v. United States, 18 Wall. 662, 85 U.S. 662, 21 L.Ed. 867; United States v. Witten, 143 U.S. 76, 79, 12 S.Ct. 372, 36 L.Ed. 81; cf. City of Cleveland v. Baltimore & O. R. Co., 6 Cir., 71 F.2d 89, 91. In general the Government is not held responsible for even the mistake of its agents or officers, not to speak of their negligence or misconduct, in making unauthorized payments of public moneys, United States v. Bentley, supra; Hunter v. United States, 5 Pet. 173, 30 U.S. 173, 187, 188, 8 L.Ed. 86; Wisconsin Cent. R. Co. v. United States, 164 U.S. 190, 207-212, 17 S.Ct. 45, 41 L.Ed. 399; and a contract containing the suggested limitation on the protection afforded the Government would seem unnatural and unusual. This was a business agreement made for hire by a corporate surety, which can hardly claim the benefit of unusually favorable interpretation of its contract. Whether Security-First Nat. Bank v. United States, 9 Cir., 103 F.2d 188, is to be followed or not, its circumstances were quite different. There the Veterans' Administration had issued checks to a person purporting to be the veteran, though informed of the veteran's death,

and the court held that the Government was estopped from questioning the genuineness of the impostor's endorsement. The case did not deal with a contract of indemnity seemingly intended to cover the very circumstances of imposture here presented.

Reversed; judgment directed for plaintiff.