**UNITED STATES v. CONTINENTAL CASUALTY CO.**

Civil Action No. 1613.

District Court, D. Maryland.
April 14, 1943.

[6] See The Mexican Prince, D.C., 70 F. 246; The Older, D.C., 36 F.2d 281; Jensen v. Sinclair Nav. Co., D.C., 58 F.2d 407(2).

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., and Leavenworth Colby, Atty., Dept. of Justice, of Washington, D. C., for plaintiff.

Clark, Thomsen & Smith, Roszel C. Thomsen and Eugene W. Test, all of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The suit in this case is against the surety on bonds furnished by Veterans under 38 U.S.C.A. § 649, as a condition to obtaining duplicate adjusted-service certificates to replace original service certificates alleged to have been lost or destroyed. There are three counts in the complaint, only the first and third of which are now involved. The case is submitted on an agreed stipulation of facts.

As to the bond sued on in the first count the controlling facts are as follows. The original certificate of the face value of $568 was dated as of January 1, 1925, and issued to the Veteran, Ernest Albright Seeman. On or about April 15, 1931 the Veteran pledged this original certificate with the Regional Office of the Veterans Administration at Charlotte, North Carolina, as security for a loan of $284, in accordance with 38 U.S.C.A. § 642(i). In 1936 there was correspondence between Seeman, then living in Chicago, with the Veterans Administration in Washington, in which Seeman informed the Administration that he had some years before, while living at Durham, N. C., borrowed on the original certificate up to the value allowed but did not recall where the loan was made. Later, when requested to supply more definite data as to the whereabouts of the certificate, he stated that all his personal papers had been lost or misplaced some years before when he had moved from his home in North Carolina, and said "I thought I once borrowed half of its value, or loan value, but this is only my recollection and I have no records to support this impression. I may have confused it with some insurance loans in the past several years but whatever your records show I am entitled to will naturally govern the amount." Subsequently, as a result of further correspondence, he submitted an affidavit of the loss of the certificate and the bond sued on, executed by himself and the defendant surety company in this case. The bond was dated December 4, 1936 in the amount of $568 which was the same amount as the face value of the original certificate.

The bond is in the usual and conventional form and was prepared by the Veterans Administration and forwarded by it to Seeman for execution. It recites the issuance of the original certificate, identified by number and date, the submission of evidence of the loss thereof with request for the issuance of a duplicate and then continues as follows:

"Whereas, The Administration of Veteran Affairs, by virtue of the World War Adjusted Compensation Act, as amended, requires a party thus situated to give a bond of indemnity with satisfactory surety to the United States *before the relief desired will be granted,* and the Administrator of Veteran Affairs having accepted the evidence submitted by the applicant as sufficient to warrant issuance of a duplicate of said certificate upon said applicant giving a proper bond of indemnity;

"Now, therefore, the condition of this obligation is such, that if the above bounden obligors, their heirs, executors, administrators, successors, or assigns, or any of them, shall pay or cause to be paid to the United States, any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of

any valid adverse claim to the proceeds of the above described Adjusted Service Certificate, or any part thereof, and shall well and truly indemnify and save harmless the United States from any claim on account of said Adjusted Service Certificate, and from all damage, loss, cost, charges, and expenses which the United States may sustain, incur, or be liable for, in consequence of any such claim *or of the granting of relief on account of said Adjusted Service Certificate,* with interest from the date of such payment, and any and all costs and expenses incurred in connection therewith, then this obligation to be void; otherwise to be and remain in full force and effect." (Italics supplied)

On December 29, 1936 the Veterans Bureau issued the duplicate Adjusted Service Certificate and forwarded it to Seeman; and later on January 13, 1937, pursuant to his application, paid to him $568, the full face amount of the duplicate certificate. Subsequently (just when does not appear) the Bureau at Washington discovered that the Regional Office of the Veterans Administration at Charlotte, N. C., had in 1931 loaned $284 to Seeman on the original certificate and made demand upon the surety for the payment of that amount with interest at the rate of 4½% per annum from April 15, 1931. The surety refused to make payment on the ground that the loss was not covered by the bond. This suit was filed May 28, 1942. The bond was apparently executed in Chicago and forwarded by mail to Washington, D. C. The defendant surety company at first made the point that under 6 U.S.C.A. § 10, the venue was improperly laid in this district; but this point if applicable, has now been waived. And no question of possible conflict of laws as to the interpretation of the bond, which otherwise might have been open, has been presented. Nor has limitations been pleaded.

The sole question in the case is whether the loss is covered by the bond. The government's contention is that in the recital of the bond above copied and italicized, the issuance of the duplicate certificate is referred to as the granting of "relief"; and that the coverage of the bond in its indemnity against loss includes as an alternative condition the following phrase also above underscored, reading "or of the granting of relief on account of said Adjusted Service Certificate." And thus the precise question of construction is, what is

the meaning of the phrase "or of the granting of relief on account of said Adjusted Service Certificate". On first impression there would seem to be a plausible basis for the government's contention as to the coverage of the bond from the use of the word "relief" in the recital and in the condition of the bond. But on further consideration I have concluded that this purely literal construction is not in accordance with the substantial purpose and intent of the bond sued on.

 We may assume that the bond, executed by a corporate surety for compensation, is to be interpreted as an insurance policy rather than strictly construed as the obligation of an individual surety. The federal rule with respect to the construction of insurance policies is that ambiguities must be construed liberally in favor of the insured, because the policies are prepared by the insurer; but this rule, if otherwise applicable in this particular suit, seems not fairly to apply because this form of bond was prepared by the insured obligee itself · in accordance with established forms applicable to bonds to be given the government under 38 U.S.C.A. § 649.

 "A bond given pursuant to a statute should naturally be construed to provide the coverage which the legislature has required as a condition of the right or relief which the statute gives. United States, to Use of Hill v. American Surety Co., 200 U.S. 197, 205, 26 S.Ct. 168, 50 L. Ed. 437; United States v. Hamilton, 7 Cir., 96 F.2d 878, 117 A.L.R. 446." United States v. Hartford A. & I. Co., 2 Cir., 117 F.2d 503, 505. 38 U.S.C.A. § 649 provides that the condition of the bond to be given thereunder shall be *"to indemnify and save harmless the United States from any claim upon such lost or destroyed certificate."* (Italics supplied) It will also be noted that the caption of the bond reads: "Bond of Indemnity to the United States. To secure the United States against the payment of any sum whatsoever on account of the issuance of Adjusted Service Certificate No. 1983892, further identified by the number A 158357 issued to Ernest Albright Seeman of the face value of $568, effective January 1, 1925." From this it appears quite clearly that both the statute and the form of bond prepared by the Veterans Bureau in such cases contemplated indemnity to the government only from claims upon the *original* certificate which has become lost or destroyed. And this is ordi-

narily the purpose and effect of bonds given in other than governmental affairs for the purpose of obtaining the issuance of duplicate instruments such as stock certificates or corporate bonds to replace lost or destroyed originals. It is inherent in the nature of such a bond that both parties contemplate that the *duplicate* will be effective and in force and will be honored by the maker in accordance with its terms. It follows that there was no breach of the bond here sued on when the government paid the face value of the duplicate certificate in accordance with its terms; and therefore the loss to the government here was a loss which had occurred *previously* to the issuance of the bond, by virtue of the loan made in 1931 on the *original* certificate by the Regional Office at Charlotte, N. C. It is also entirely clear from the wording of the condition of the bond that it was to indemnify against *future* and not *prior* claims. And this of course is in accordance with the ordinary rule of insurance policies which do not cover prior losses unless expressly and clearly provided for in the policy.

The contention of counsel for the government is that there are four separate alternative conditions in the bond as to each of which the bond provides indemnity; and that these four conditions against loss are (1) the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate; (2) from any claim on account of said Adjusted Service Certificate; (3) from all damage, loss, etc., in consequence of such claim, (4) or of the granting of relief on account of said Adjusted Service Certificate. The literal argument is that the issuance of the duplicate certificate was the granting of relief to the Veteran and therefore by the 4th alternative indemnity condition any payment of the *duplicate* certificate in excess of the amount still due to the Veteran constituted a loss to be paid by the surety under the bond. Although it is probable that many thousands of similarly worded bonds have been issued to the government, no judicial decision has been cited by counsel in support of the construction relied upon. And it appears that the administrative view heretofore expressed has been to the contrary. See Opinions of Comptroller General, Vol. 17, pp. 510 and 1089.

The only judicial decisions on this form of bond cited by counsel for the government are two fairly recent cases in the Second Circuit. United States v. Hartford A. & I. Co., supra, and a companion case of United States v. Continental Casualty Co., 2 Cir., 117 F.2d 506. But a careful reading of those cases will show that while the bond was held liable in both cases, the facts are quite different from those of the instant case. In both cases the loss which the government recovered arose from an improper use of the *original* certificate, and, as I read the cases, the loss was not at all predicated upon the payment of the *duplicate* certificate; and in both cases the loss arose *subsequent* and not *prior* to the issuance of the duplicate. The conditions of the bond in both cases were precisely the same as that in the instant case but there was no consideration or interpretation by the court of the fourth alternative condition here relied on by the government. We may assume here, as did Circuit Judge Clark in the Hartford case, that the mere fact that the condition of the bond is broader than the requirement of the statute will not be conclusive against liability where it was the intention of the parties to make the liability of the bond greater than that imposed by statute; but the real question here is whether the parties did so intend. I think they did not. Both cases hold that the fact that the loss to the government would not have occurred if the government's officials had been diligent was not a defense available to the surety. And the cases also hold that the bond covers loss and expenses from *invalid* as well as *valid* claims arising on the *original* certificate. But the present holding does not run counter to either of these points. In this court, in Civil Action No. 1399, United States v. United States F. & G. Co.[1] on facts somewhat similar to those of the Second Circuit cases, Judge Coleman also held the bond liable (without written opinion) and entered a summary judgment against the defendant.

With regard to the claim set up in the third count of the complaint, the facts are different. As stated in the stipulation, there is a tendency to confusion by reason of the identical names of two different Veterans both of whom had outstanding Adjusted Service Certificates. Somewhat

---

[1] No opinion for publication.

clarified in statement the following facts appear.

In 1931 a certain John Greer of Mt. Vernon, Illinois, held an original certificate of the face value of $242, issued January 1, 1925; and *another* John Greer, of Chicago, held a certificate of the face value of $548, dated January 1, 1931. On June 12, 1931 the *Chicago* John Greer submitted an affidavit and bond representing to the Veterans Bureau that the *original* certificate No. 100,715 (which had in fact been issued to the *Mt. Vernon* John Greer) had been destroyed by fire on December 13, 1928, and requested a duplicate certificate therefor to be issued to him (the Chicago John Greer) Such a duplicate certificate was then inadvertently issued by the Bureau dated July 1, 1931 for the face value of $242 and sent to John Greer of Chicago. On July 16, 1931 the Chicago John Greer pledged this duplicate certificate with the Veterans Administration as security for a loan of $121. Later, in 1932 and in 1936, the Chicago John Greer cashed the whole of his own certificate for $548. And in 1932 and 1937 the Mt. Vernon John Greer cashed the whole face value of *his* own *original* certificate. By virtue of these transactions the government has *overpaid* and lost the sum of $121, the amount loaned to the Chicago John Greer on the duplicate certificate issued to him to replace the original certificate for $242 which had been issued to the Mt. Vernon John Greer. And this loss arose from the fact that the government was obliged to pay the amount of the *original* outstanding certificate issued to the *Mt. Vernon* John Greer.

It does not clearly appear from the stipulation whether the action of the Chicago John Greer in obtaining the duplicate of the original certificate issued to the Mt. Vernon John Greer was fraudulent or only mistaken; but the particular fact is deemed immaterial in view of the recitals in the bond which is in identically the same form as that considered with respect to the first count of the complaint. The only explanation found in the stipulation of the circumstances under which the duplicate certificate was issued is that in 1931 the Chicago John Greer returned his own certificate for $548, dated January 1, 1930, to the Bureau, stating that he had received an Adjusted Service Certificate in 1925 which he had lost and that he believed the certificate which he was returning should be dated as of 1925 to correspond with his original certificate. (Whether the returned certificate was in fact an original or duplicate does not clearly appear). On receipt of the letter from the Chicago John Greer the Veterans Bureau found no file in his name and address and apparently confused the Chicago John Greer with the Mt. Vernon John Greer, as to whom there was a file. The Bureau then advised the Chicago John Greer of the issuance of the original certificate No. 100,715, in the amount of $242, and requested him to execute an affidavit relative to the loss or destructio of *this* original certificate. The Chicago John Greer's *letter* was apparently placed in the file pertaining to the Mt. Vernon John Greer, but the *certificate* which had been returned by the Chicago John Greer was not similarly placed in the file of the Mt. Vernon John Greer; and on July 1, 1931 this certificate, being found by some clerk or official in the Bureau and being separated from the letter which had accompanied it, was inadvertently returned to the Chicago John Greer, and, as previously stated, subsequently cashed by him.

■ The bond sued on dated June 12, 1931 recites—"Whereas, an Adjusted Service Certificate No. 100,715, further identified by No. A–1–666–578, dated January 1, 1925, was issued, pursuant to the World War Adjusted Compensation Act, to John Greer, a Veteran of the World War; Whereas, evidence of the loss, theft, defacement, mutilation or destruction of said certificate together with a request for a duplicate of said certificate by the lawful holder has been submitted to the Director, United States Veterans Bureau;" and one of the conditions of the bond is that the obligors "shall pay or cause to be paid to the United States any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate, or any part thereof." It seems clear that the facts here bring the case directly within the coverage of the bond. By the recitals of the bond it was given to secure a duplicate of the Adjusted Service Certificate No. 100,715 (which had been issued to the Mt. Vernon John Greer), which the bond recited had been lost or destroyed, and the express condition of the bond was that if thereafter the govern-

ment was called upon to pay any valid claim on the described original certificate, the bond would be liable therefor. As the original certificate in question had not in fact been lost or destroyed but was then in the possession of the rightful holder thereof, the Mt. Vernon John Greer, he, of course, had a valid claim thereon which the government was forced to pay; and the required payment constituting the loss was made *after* the date and delivery of the bond. It is also clear enough that the loss to the government arose from or was largely attributable to the carelessness or mistake by some one in the Veterans Bureau; but that did not constitute a defense to the surety as was expressly held in United States v. Hartford A. & I. Co. and United States v. Continental Casualty Co., supra

The principal defense relied upon by the surety in this particular case is that the bond was void or at least voidable by virtue of a mutual mistake of a material fact in that, it is contended, both the surety and the Veterans Bureau understood that the John Greer named in the recital in the bond with regard to the issuance of the original certificate No. 100,715, meant John Greer of Chicago when in fact that particular numbered certificate had been issued to John Greer of Mt. Vernon. No doubt the surety did so understand, but it does not appear that the Veterans Bureau so understood. On the contrary it rather appears that the Bureau understood the recital in the bond to refer to the original certificate issued to the Mt. Vernon John Greer as was in fact the case. The recitals in the bonds are those made by the obligors on the bond. Of course the mistake was contributed to by the clerk in the Bureau in failing to obtain the proper identification of the Chicago John Greer and in failing to differentiate between him and the Mt. Vernon John Greer. But here again this negligence, if you please, of the government's agent is not a defense to the surety. And it seems clear enough that even if the Chicago John Greer, who is the principal on the bond, originally acted mistakenly in obtaining the duplicate certificate and that his mistake was caused by the confusion in the Veterans Bureau between the two John Greers, he accepted the benefits of the mistake by first obtaining a loan on the duplicate certificate so mistakenly issued to him, and subsequently cashing in full the face value of his own certificate which had been returned to him by the Bureau. In these circumstances the defense set up by the surety is not properly available to it.

The conclusion on the whole case is, therefore, that the defendant is entitled to a judgment on the first count of the complaint, and the plaintiff is entitled to a judgment in the principal amount of $121 on the third count, with interest on said amount properly calculated. Counsel for the parties can agree upon the proper calculation of interest to be included in the judgment, and advise the Clerk of the court of the amount by stipulation. When the stipulation is filed the Clerk is directed to enter judgment for the plaintiff in the agreed amount.