## UNITED STATES v. CONTINENTAL CASUALTY CO.

### No. 5173.

Circuit Court of Appeals, Fourth Circuit.
Jan. 10, 1944.

Leavenworth Colby, Atty., Department of Justice, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., Bernard J. Flynn, U. S. Atty., of Baltimore, Md., George F. Foley, Atty., Department of Justice, of Washington, D. C., and T. Barton Harrington, Asst. U. S. Atty., of Baltimore Md., on the brief), for appellant and cross-appellee.

Roszel C. Thomsen, of Baltimore, Md. (Clark, Thomsen & Smith, of Baltimore, Md., on the brief), for appellee and cross-appellant.

Before PARKER and SOPER, Circuit Judges, and WARING, District Judge.

SOPER, Circuit Judge.

Two causes of action are involved in this suit by the United States to recover the losses incurred by issuing duplicate adjusted service certificates to two world war veterans in place of original certificates alleged to have been lost or destroyed. The defendant is the surety on two statutory lost instrument bonds given by the veterans to secure the issuance of the duplicate certificates. The suit was tried by the District Judge without a jury upon an agreed statement of facts and resulted in a judgment for the surety on the first cause of action and for the United States on the second for the reasons stated in an opinion reported at D.C., 49 F.Supp. 717, 718.

*The Seeman Case:*

The controlling facts as stated in the opinion of the District Court are as follows:

"The original certificate of the face value of $568 was dated as of January 1, 1925, and issued to the veteran, Ernest Albright Seeman. On or about April 15, 1931 the veteran pledged this original certificate with the Regional Office of the Veterans Administration at Charlotte, North Carolina, as security for a loan of $284, in accordance with 38 U.S.C.A. § 642(i). In 1936 there was correspondence between Seeman, then living in Chicago, with the Veterans Administration in Washington, in which Seeman informed the Administration that he had some years before, while living at Durham, N. C., borrowed on the original certificate up to the value allowed but did not recall where the loan was made. Later, when requested to supply more definite data as to the whereabouts of the certificate, he stated that all his personal papers had been lost or misplaced some years before when he had moved from his home in North Carolina, and said, 'I thought I once borrowed half of its value, or loan value, but this is only my recollection and I have no records to support this impression. I may have confused it with some insurance loans in the past several years but whatever your records show I am entitled to will naturally govern the amount.' Subsequently, as a result of further correspondence, he submitted an affidavit of the loss of the certificate and the bond sued on, executed by himself and the defendant surety company in this case. The bond was dated December 4, 1936, in the amount of $568 which was the same amount as the face value of the original certificate. * * *

"On December 29, 1936 the Veterans' Bureau issued the duplicate Adjusted Service Certificate and forwarded it to Seeman; and later on January 13, 1937, pursuant to his application, paid to him $568, the full face amount of the duplicate certificate. Subsequently (just when does not appear) the Bureau at Washington discovered that the Regional Office of the Veterans Administration at Charlotte, N. C. had in 1931 loaned $284 to Seeman on the original certificate and made demand upon the surety for the payment of that amount with interest at the rate of 4½% per annum from April 15, 1931. The surety refused to make payment on the ground that the loss was not covered by the bond."

The result of these transactions was that the United States sustained a loss in the sum of $284 representing the amount paid by the Veterans' Administration in excess of the face value of the original certificate.

The bond, which was prepared by the Veterans' Administration, is in the usual form. It recites the issuance of the original certificate, the submission of evidence of the loss thereof and the request for the issuance of a duplicate, and then continues as follows:

"Whereas, The Administrator of Veterans' Affairs, by virtue of the World War Adjusted Compensation Act, as amended, requires a party thus situated to give a bond of indemnity with satisfactory surety to the United States before the relief desired will be granted, and the Administrator of Veterans' Affairs having accepted the evidence submitted by the applicant as sufficient to warrant issuance of a duplicate of said certificate upon said applicant giving a proper bond of indemnity;

"Now, Therefore, the condition of this obligation is such, that if the above bounden obligors, their heirs, executors, administrators, successors, or assigns, or any of them, shall pay or cause to be paid to the United States, any and all sums whatever which the United States may be called upon to pay, including interest and costs on account of the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate, or any part thereof, and shall well and truly indemnify and save harmless the United States from any claim on account of said Adjusted Service Certificate, and from all damage, loss, cost, charges, and expenses which the United States may sustain, incur, or be liable for, in consequence of any such claim or of the granting of relief on account of said adjusted service certificate, with interest from the date of such payment, and any and all costs and expenses incurred in connection therewith, then this obligation to be void; otherwise to be and remain in full force and effect."

The views expressed by the District Judge in holding that the loss was not covered by the bond may be summarized as follows: The bond was given pursuant to the statute and should therefore be construed to furnish the coverage required by the statute as a condition to the relief granted. The statute in question, § 13 of the Act of July 3, 1926, 44 Stat. 830 as amended, 38 U.S.C.A. § 649, provides that the lawful owner of a lost certificate who makes application for a duplicate shall file a bond "with condition to indemnify and

save harmless the United States from any claim upon such lost or destroyed certificate". Therefore it appears that both the statute and bond contemplate indemnity to the United States only for claims upon the original certificate and not from claims upon the duplicate issued in lieu thereof. The loss in this case occurred previous to the issuance of the bond by reason of the loan made to the veteran upon the original certificate in 1931, and hence the loss is not covered by the bond subsequently given to indemnify the United States against future but not prior claims. See 17 Decisions of the Comptroller-General, pp. 510, 1089; cf. 18 Id. 749.

We think that the United States should prevail on the first cause of action. The recital of the bond declares that when a request for the issuance of a duplicate certificate is made, a bond of indemnity is required by virtue of the World War Adjusted Compensation Act, 38 U.S.C.A. § 591 et seq., "before the relief desired will be granted". The condition of the bond includes the promise to indemnify and save harmless the United States from all damage "in consequence of the granting of relief on account of said adjusted service certificate". Hence the issuance of the duplicate certificate upon giving bond amounted to a granting of relief to the veteran, and the damage suffered by the United States in this case was a consequence of such a grant, within the literal meaning of the terms of the bond. We think that this significance is not only the literal but also the true meaning of the conditions of the bond, because it was the obvious general purpose of the Act to serve the veteran by issuing to him a duplicate certificate and at the same time to protect the United States from possible loss from such action. It is certain that the United States would have suffered no loss in this case if the veteran had not been granted relief by the issuance of the duplicate certificate, and that the loss did not occur until the excess payment was made subsequent to the issuance of the bond.

It is true that the statute merely specifies a bond to safeguard the United States from any claim "upon such lost or destroyed certificate" and that the claim in this case that caused the loss was not made upon the lost but upon the duplicate certificate. The bond, however, follows the general purpose rather than the literal phraseology of the Act and is in no sense inconsistent therewith; and if it be deemed that the bond furnishes a broader coverage than the Act requires, the obligee is nevertheless entitled to the full scope of the coverage for which the parties contracted. See, United States v. Hartford Accident & Indemnity Co., 2 Cir., 117 F.2d 503, 505; United States v. Continental Casualty Co., 2 Cir., 117 F.2d 506.

*The John Greer case:*

The facts in this case as stated in the opinion of the District Judge are as follows [49 F.Supp. 721]:

"In 1931 a certain John Greer of Mt. Vernon, Illinois, held an original certificate of the face value of $242, issued January 1, 1925; and another John Greer, of Chicago, held a certificate of the face value of $548, dated January 1, 1931. On June 12, 1931 the Chicago John Greer submitted an affidavit and bond representing to the Veterans' Bureau that the original certificate No. 100,715 (which had in fact been issued to the Mt. Vernon John Greer) had been destroyed by fire on December 13, 1928, and requested a duplicate certificate therefor to be issued to him (the Chicago John Greer). Such a duplicate certificate was then inadvertently issued by the Bureau dated July 1, 1931 for the face value of $242 and sent to John Greer of Chicago. On July 16, 1931 the Chicago John Greer pledged this duplicate certificate with the Veterans' Administration as security for a loan of $121. Later, in 1932 and in 1936, the Chicago John Greer cashed the whole of his own certificate for $548. And in 1932 and 1937 the Mt. Vernon John Greer cashed the whole face value of his own original certificate. By virtue of these transactions the government has overpaid and lost the sum of $121, the amount loaned to the Chicago John Greer on the duplicate certificate issued to him to replace the original certificate for $242 which had been issued to the Mt. Vernon John Greer. And this loss arose from the fact that the government was obliged to pay the amount of the original outstanding certificate issued to the Mt. Vernon John Greer.

"It does not clearly appear from the stipulation whether the action of the Chicago John Greer in obtaining the duplicate of the original certificate issued to the Mt. Vernon John Greer was fraudulent or only mistaken; but the particular fact is deemed immaterial in view of the recitals in the bond which is in identically the same

form as that considered with respect to the first count of the complaint. The only explanation found in the stipulation of the circumstances under which the duplicate certificate was issued is that in 1931 the Chicago John Greer returned his own certificate for $548, dated January 1, 1930, to the Bureau, stating that he had received an Adjusted Service Certificate in 1925 which he had lost and that he believed the certificate which he was returning should be dated as of 1925 to correspond with his original certificate. (Whether the returned certificate was in fact an original or duplicate does not clearly appear.) On receipt of the letter from the Chicago John Greer the Veterans' Bureau found no file in his name and address and apparently confused the Chicago John Greer with the Mt. Vernon John Greer, as to whom there was a file. The Bureau then advised the Chicago John Greer of the issuance of the original certificate No. 100,715, in the amount of $242, and requested him to execute an affidavit relative to the loss or destruction of this original certificate. The Chicago John Greer's letter was apparently placed in the file pertaining to the Mt. Vernon John Greer, but the certificate which had been returned by the Chicago John Greer was not similarly placed in the file of the Mt. Vernon John Greer; and on July 1, 1931 this certificate, being found by some clerk or official in the Bureau and being separated from the letter which had accompanied it, was inadvertently returned to the Chicago John Greer, and, as previously stated, subsequently cashed by him.

"The bond sued on dated June 12, 1931 recites—'Whereas, an Adjusted Service Certificate No. 100,715, further identified by No. A-1-666-578, dated January 1, 1925, was issued, pursuant to the World War Adjusted Compensation Act, to John Greer, a Veteran of the World War; Whereas, evidence of the loss, theft, defacement, mutilation or destruction of said certificate together with a request for a duplicate of said certificate by the lawful holder has been submitted to the Director, United States Veterans' Bureau;' and one of the conditions of the bond is that the obligors 'shall pay or cause to be paid to the United States any and all sums whatever which the United States may be called upon to pay, including interest and costs, on account of the establishment of any valid adverse claim to the proceeds of the above described Adjusted Service Certificate, or any part thereof.' "

Upon these facts the court held that the United States was entitled to recover on the bond because the United States was compelled to pay the amount of the original certificate to the Mt. Vernon John Greer, the rightful owner thereof, after the date and delivery of the bond, and this payment constituted a loss through the payment of a valid adverse claim to the proceeds of the original certificate. The carelessness of the Veterans' Bureau was held, as in United States v. Continental Casualty Co., 2 Cir., 117 F.2d 506, to constitute no defense to the surety.

The principal defense urged by the surety to this cause of action is that the bond was issued as the result of a mutual mistake in that both the Veterans' Bureau and the surety understood that the John Greer named in the recital in regard to the issuance of the original certificate No. 100,715 meant the Chicago John Greer, when in fact that certificate had been issued to the Mt. Vernon John Greer. The judge was of the opinion that the mistake was not mutual because even if the surety had this understanding, the Bureau understood the recital to refer to the original certificate issued to the Mt. Vernon John Greer. However this may be, we have no doubt of the surety's liability. The duplicate certificate was issued and the bond was given so that the United States might give aid in a situation caused by some one's mistake or neglect and also to safeguard the United States against loss if the issuance of the duplicate certificate should prove to have been mistaken. Under these circumstances, the rule has no relevance that parties who contract upon the assumption that a certain state of facts exists should be relieved from their bargain if the assumption is erroneous. As the District Judge pointed out, the wrong John Greer accepted the benefits of the duplicate certificate, mistakenly issued to him, by obtaining a loan thereon, and subsequently the United States was compelled to pay the proceeds of the original certificate to the right John Greer whereby the United States suffered a loss covered by the express terms of the bond.

The judgment in the second cause of action will be affirmed and the judgment in the first cause of action will be reversed and the case remanded to the District Court to enter judgment for the United States as prayed in the complaint.

Affirmed in part; reversed in part and remanded.